**Thomas ALFIERI, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION,**
**Defendant.**

**No. Civil 1969–19.**

United States District Court,
W. D. New York.

April 6, 1973.

James C. Heaney, Buffalo, N. Y., for plaintiff.

Raichle, Banning, Weiss & Halpern, Buffalo, N. Y. (Arnold Weiss, Buffalo, N. Y., of counsel), for defendant.

CURTIN, District Judge.

In his complaint, plaintiff alleges that he was unlawfully prevented from working by the defendant Corporation for a period of about eighteen months from January 6, 1964 to June 3, 1965, in violation of the Collective Bargaining Agreement. When pretrial preparation was completed by the parties in late 1972, the court questioned plaintiff about the applicability of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), at a meeting held with counsel. Plaintiff's counsel insisted that, under the circumstances of this case, he was entitled to sue the defendant Corporation directly without alleging fault on the part of the Union.

Following the meeting, defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and also moved for summary judgment under Rule 56. In support of its motion pursuant to Rule 56, the defendant filed an extensive affidavit by Ronald A. Martin, Assistant Personnel Director of the Chevrolet-Tonawanda Motor Plant of the defendant General Motors Corporation. Relying on Corporation records, Mr. Martin's affidavit sets forth the reasons for the termination of Mr. Alfieri's employment and the history of the various grievance procedures between the plaintiff, the Corporation and the Union. In opposition to defendant's motion for summary judgment, plaintiff filed an affidavit in

which he did not seriously contest the facts set forth in Mr. Martin's affidavit, but claimed that the Martin affidavit was based upon hearsay and therefore not admissible in evidence. Upon receipt of this affidavit, the court wrote to plaintiff's counsel on February 15, 1973 inviting him to file a further affidavit in support of plaintiff's claim.[1]

On March 8, 1973, plaintiff filed an additional affidavit which, for the most part, was a rehash of the first. He denies generally the accuracy of the Corporation records, but says little or nothing about the grievance procedures and does not point out any failure whatever on the part of the Union to represent him in a proper fashion. Plaintiff continues to insist that he is entitled to sue the defendant Corporation directly. The court will accept Mr. Martin's affidavit and the exhibits attached as an accurate statement of the history of the controversy. The court finds that the essential facts are as follows.

On February 14, 1960, at a time when the plaintiff, Thomas Alfieri, was employed by defendant at its Chevrolet-Tonawanda Motor Plant, he was struck and seriously injured in an automobile accident not connected with his employment. He suffered a permanent injury to his left leg, to his knee joint, a two-inch shortening of the leg, and restriction of motion. On February 15, 1960, he was placed on the defendant's Absentee Roll and received maximum sickness and other benefits under the terms of the Collective Bargaining Agreement. From the time of the accident until the

fall of 1963, plaintiff submitted periodical medical reports to the defendant indicating his interest in returning to work and his desire to remain on the Absentee Roll. However, in late November, 1963 he informed the Absentee Control Clerk that, because of his injuries and age, he was not interested in going back to work. When the Labor Relations Department was informed of this, plaintiff was removed from the Absentee Roll on December 10, 1963 and marked a "voluntary quit." Pursuant to the Collective Bargaining Agreement, the Corporation informed the Union of this action on December 15.

During 1964, plaintiff changed his mind and attempted to get back on the Absentee Roll. He sent several medical reports to the Corporation. For example, on April 21, 1964, one doctor wrote that plaintiff was "capable of working commensurate with his handicaps produced by his fractures." During this period of time, the Corporation's position, which was relayed to the plaintiff and to the Union, was that he was a "voluntary quit." Finally, on November 17, 1964, plaintiff filed the following grievance:

> I charge Mgt. with viol. of 43–b of the N. A. I have been off from work on sick leave in excess of 26 weeks. My physician has stated that I am capable of returning to work on my former job assignment. Management to date has refused me to work. I ask to be recalled to work immediately and to be paid all monies I may lose through any further delay.

---

1. The letter which the court sent to plaintiff's attorney on February 15, 1973 read as follows:

> After reviewing the affidavits submitted on the motion for summary judgment, I thought it best to write to you. One of the positions you take in your affidavit in answer to that of Mr. Martin is that his affidavit is hearsay and should be rejected.
>
> Before filing my decision, I want you to understand my position clearly. It appears to me that Mr. Martin, as the custodian of the records of General Motors, would be qualified under the rules to bring these records into court and to testify about them.

> Under the circumstances, I would be entitled to find that they are trustworthy and reliable. Therefore, if you desire to file a further affidavit setting forth in what way Mr. Martin's affidavit is not correct and that his records should not be relied upon, I will be glad to receive it, if filed within twenty days.
>
> In your affidavit, you do not discuss the grievance procedures at all. You will recall that at the pretrial I indicated to you that my impression was that the history of the grievance procedures and the impact of Vaca v. Sipes were most important considerations.

Union and Management were unable to resolve the grievance at the first or second steps and, on February 11, 1965, the grievance was taken to the third step and heard by a four-man Appeal Board. At that step, the case was settled by restoring plaintiff to the Absentee Roll. The settlement read:

> This case was settled by reinstating the employee's seniority and placing him on the Absentee Roll.

However, before going back to work, plaintiff had to be approved by the plant physician. When he was examined on February 17, 1965, the doctor concluded that plaintiff was not able to return to his former job assignment and refused to approve his return to work.

On February 19, 1965, a second grievance was filed protesting the decision of the plant doctor. The grievance read as follows:

> I charge Management with violating my seniority rights for refusing to return me to work. I was examined by plant doctor on 2/17/65; Management claims I am not physically fit to return to work. My doctor claims I am physically fit to return to work. I ask that this violation be stopped at once. I also ask for all monies I may lose, including vacation and/or holiday pay.

When this grievance could not be settled at the first two steps, it was heard on April 5, 1965 by the four-man Appeal Board. Pursuant to agreement, plaintiff was examined by an impartial physician. The report was submitted to the Appeal Board on May 28, 1965 and the grievance was settled by returning plaintiff to work on June 3, 1965, subject to his passing a physical examination at that time. The language of settlement reads:

This case was satisfactorily settled on the basis the employee was returned to work on June 3, 1965.

When the examination revealed that plaintiff had sustained a permanent injury but was capable of doing some work, he was restored to work on June 3, 1965. The plaintiff was not awarded any back pay in either settlement.

In 1967, plaintiff complained to the Public Review Board of the International Union that the Union had improperly settled his grievance "without back pay." The Public Review Board refused to consider plaintiff's appeal. Plaintiff did nothing further until September 27, 1968, when his present attorney sent a letter to the defendant making a claim for back pay. In this action, the plaintiff has not charged the Union with any wrongdoing or failure to represent him properly, nor has he called the court's attention to any facts showing any improper conduct on the part of his Union's representatives.

The plaintiff's claim must be dismissed. If he has exhausted his collective bargaining remedies in his claim for back pay, he is bound by the decision reached through the collective bargaining procedures. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). He has failed to show any improper or bad faith conduct on the part of the Union in processing his grievance which would repudiate the collective bargaining decision. Vaca v. Sipes, *supra*.

The defendant is entitled to summary judgment dismissing the plaintiff's complaint. The Clerk shall enter judgment in favor of the defendant dismissing plaintiff's complaint.

So ordered.