Gerald CHAPEL, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.

No. 17585.

Court of Civil Appeals of Texas, Fort Worth.

March 7, 1975.

James P. Finstrom, Dallas, for appellant.

J. H. Hand and Joe L. Randle, Dallas, for appellee.

## OPINION

SPURLOCK, Justice.

This is a summary judgment granted in favor of the defendant, Southwestern Bell Telephone Company, in a suit brought by plaintiff, Gerald Chapel, in which he sought damages for loss of earnings due to his claimed wrongful discharge from employment. He joined as defendant the Communications Workers of America, alleging a cause of action based upon the union's refusal to take the plaintiff's grievance to arbitration pursuant to the terms of the collective bargaining agreement. He further alleged that the company's decision to terminate him was arbitrary, capricious, without just cause, and in breach of the contract.

No appeal was taken from a prior uncontested motion for summary judgment that resulted in an order of dismissal of the cause of action asserted against the union.

Plaintiff conceded that the union had represented him through all three levels of the grievance procedure provided for in the contract.

On appeal plaintiff contends that the trial court erred in granting the summary judgment as to defendant company because the judgment had the effect of (1) denying plaintiff a forum for resolution of his contract dispute and, (2) resolved fact issues without a proper trial.

The parties will be referred to as plaintiff, the company, and the union.

The summary judgment proof consisted of plaintiff's deposition to which was attached the 1968 Plant Agreement between the union and the company which plaintiff admits was the contract in effect at the time all pertinent events took place; as well as two affidavits filed by the company. Plaintiff filed no contesting affidavits or proof contesting the motion for summary judgment.

Plaintiff admits that he was employed by the company for a period of time less than three years.

1. Plaintiff brings his action under the 1968 Plant Agreement, specifically pointing out Article XV, Section 7, of the Union Agreement. The heading of this article is, "Force Adjustment." This Section applies to a situation where there is a general layoff because of force reduction. It does not apply to a situation where an individual has been discharged for disciplinary reasons or inadequate work performance. There is no dispute between the plaintiff and company that there was no force adjustment or layoff; and for the last 10 years the work force had been increasing.

The above Article contains no language indicating its application to a situation where an individual employee is permanently dismissed from employment because of his conduct or poor work performance; rather, it is the part of the contract providing for force adjustments. Seniority (not the quality of work performance or employee conduct) is the stated basis for determining which employees are retained and which employees are laid off.

More specifically, Section 7, the sole contractual provision on which appellant sues, contains the procedure for force adjustments within "Plant Department Work Groups," as follows:

"Section 7. *Layoffs* (*excepting suspensions for disciplinary reasons*) within Plant Department Work Groups determined in accordance with this Article, arising *in the normal course of operations* shall be in accordance with the following procedure.

"(1) By laying off, to the extent determined necessary and without regard to any individual differences in their lengths of service, from among the employees, whether regular, temporary or occasional, within such Work Group, having less than one year of service, and,

"(2) After making the layoffs outlined in (1) next above, any additional such layoffs shall be made from among any remaining temporary or occasional employees within such Work Groups, regardless of length of service, and

"(3) After making the layoffs outlined in (2) next above, any additional such layoffs shall be made in the order of service (shortest to longest) from among the employees within such Work Group." (Emphasis ours.)

There had been no layoffs by the company during the past 10 years. This fact was never contested or placed in dispute.

2. Plaintiff, in his deposition, stated he had misrepresented his age in his application, had been arrested once for drunken driving while in military service; in answer to the application for employment he stated he had never been arrested or convicted but in fact he had been convicted of the offense of burglary; since he had been working for this company he had been representing the younger and less experienced employees even though he had no official capacity with the union; he had had some difficulty in getting along with fellow employees; he was having trouble with a co-employee who was having an affair with his wife; he had sought a transfer so there would be no trouble on the job; he admitted that his supervisor was afraid he would commit an act of violence while on duty and it would be in the newspapers and would be bad public relations for the company; his supervisor had stated to him

that the plaintiff had some unhappy people working under him and plaintiff said he knew that but he had other things on his mind; he thereafter had been engaged in court litigation in the nature of a divorce with his wife; was arrested for assaulting his wife, he kicked the door down at the apartment where he had been living and the landlord had called the company trying to get plaintiff to pay the damages; the telephone company called him in regards to the non-payment of his telephone bill; that he had some creditors who had been calling the company; his wife had hot checks out and he had been threatened with suits; that he had led a demonstration at the University of Texas at Arlington; he had been arrested for theft; he was fired because his supervisor "didn't want him because he was a ripple maker and brought dissent among the younger employees and they should get rid of him;" the company wanted to get rid of him because of what he had on them, in that he had been ordered to and did bury some $5,000.00 worth of equipment and that he knew of sexual promiscuity among the first line supervisors, the tapping of telephone lines by supervisors; and that for all these reasons he had been fired.

He admitted also that he had two work errors charged against him and on July 18 he had been suspended for one day for a work error.

Thus, the plaintiff admitted that these were the reasons he was fired and there had been no general reduction in force or general layoff of employees.

Plaintiff further testified in his deposition as follows:

"Q Then, is it your statement that you were not fairly represented by the Communications Workers of America at first, second and third step grievance?

"A They represented me fairly but not wholeheartedly."

Plaintiff admitted in his deposition that the union had represented him through the three different stages of the formal grievance procedure, the only three provided for in the contract for employees who had service of less than three years.

This contract provided for binding arbitration only for employees who had service past their probationary period. All employees who had had three years of service or longer were given this protection. Those who had not had three years of service got less protection under the terms of the contract.

■ The summary judgment evidence shows conclusively and without dispute that plaintiff's grievance was taken through all three levels of the grievance procedure and that the company and the union satisfied all of the contractual obligations and rights relative to plaintiff's dismissal; and that as a matter of law the company had not breached Article XV, Section 7, or any other part of the collective bargaining agreement.

■ Since this is a suit on a collective bargaining agreement it comes under the provisions of Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C., Section 185), and the law to be applied is the federal substantive law. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

■ Plaintiff's recovery under a collective bargaining agreement is limited to the remedy provided for him in that agreement. Haynes v. United States Pipe & Foundry Company, 5 Cir., 362 F.2d 414 (1966).

The Haynes case, supra, like the present case, was one where the discharged employee, after taking his nonarbitrable grievance through the grievance procedure, brought an action in court for wrongful discharge. The Fifth Circuit, referring to prior cases, stated the applicable labor law principles as follows:

"Congress explicitly stated, by way of a policy, in § 203(d) of the Taft-Hartley Act,

29 U.S.C.A. § 173(d), that in settling grievance disputes, the Act contemplated that the method agreed upon by parties to collective bargaining agreements should be the means of settling such disputes. In suits under § 301(a), the Supreme Court construed this policy as requiring the courts to give full play to the means chosen by parties to a collective bargaining agreement for settlement of their differences. . . .

"The common theme of these cases is that when a dispute arises within the scope of a collective bargaining agreement, the parties are relegated to the remedies which they provided in their agreement. . . .

". . . The agreement here ends with the decision of the plant manager unless the union takes the grievance to a strike or at least notifies the employer that a strike will take place. . . . Moreover, the national labor policy . . . is that an employee is bound by such grievance remedies as his union may negotiate. The means chosen here did not include arbitration but it is binding on the employee. . . ."

The court concluded that the trial court acted properly in dismissing Haynes' action for wrongful discharge, viz:

"The fact of the matter here is that the union processed appellant's grievance up to the point of striking. The denial of his claim then became final. We believe the law to be that his claim was thereby barred. The court has jurisdiction. Smith v. Evening News Association, supra. The action under the grievance procedure, here a final decision under the terms of the agreement, may be asserted in bar as an affirmative defense. That is this case, and thus it must be affirmed. The treatise writers agree with this view. See Jones, Compulsion and the Consensual in Labor Arbitration, 51 Va.L.Rev. 369, 375 (1965); Cox, Rights under a Labor Agreement, 69 Harv.L.Rev. 601, 648–49 (1956). And cf. Humphrey v. Moore, [375 U.S. 335, 84 S. Ct. 363, 11 L.Ed.2d 370] supra."

The contract upon which this suit is brought provides that employees with more service receive more protection than those with less service and serving what is generally known as a probationary period. For example, more senior employees are usually afforded better job security, more vacation time, more opportunities for promotions, better wage treatment, and more retirement and other benefits. Therefore, it is understandable why the agreement now before the court establishes the grievance procedure as the only forum for the discharged, relatively short-serviced employee whose service does not exceed three years, one whose service could be short as a day or less. This principle is common to union-management contracts.

Plaintiff also pursues at some length his contention that his action is not foreclosed by the grievance proceedings in which he participated since these are not "final and binding." He insists that as the arbitration provisions do not apply to him (he has less than three years of seniority) he does not fall within the purview of the U. S. Supreme Court's endorsement of arbitration procedures as the preferable means of resolving conflicts under collective bargaining agreements.

■ We agree that within the context of this collective bargaining agreement the grievance procedure to which plaintiff submitted was not final and binding, but it does not follow in the absence of such a mandate that he may pursue his remedy in our state courts by seeking damages for breach of contract.

The controlling language is found in the 1968 Agreement of General Application which is incorporated with the 1968 Plant Agreement. Article II ("Service Interruption") states as follows: "Any employee complaint or grievance which is subject to handling under the grievance procedures shall be presented and heard promptly in accordance with the provisions of those procedures and the arbitration procedures, *where applicable.*

"As to those employee grievances which are subject to arbitration, the Union, its officers, or representatives will not order or sanction a work stoppage or slowdown at any time.

"As to those employee complaints and grievances which are not subject to arbitration, the Union, its officers, or representatives will not order or sanction a work stoppage or slowdown *while the matter is being processed* through the Grievance procedures." (Emphasis ours.)

In other words, when the grievance is arbitrable the result is final and binding. When, however, the grievance is not of type subject to mandatory arbitration, the Union retains its right to strike and it is upon such a decision that plaintiff's ultimate redress must turn.

██ By virtue of the above language it was incumbent upon plaintiff that he show the Union in violation of its duty of fair representation before he could complain either of its failure to strike over his grievance or any resulting damages; i. e., this is the type of case to which a showing of violation of the union's duty of fair representation was prerequisite to any recovery from the company based on breach of contract. Vaca v. Sipes, 386 U. S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Since the plaintiff acquiesced in the disposition of its cause against the union in the summary judgment proceeding and has taken no appeal therefrom, he cannot maintain his action against the company.

██ Once it was established that there was no reduction in force then the company's reason for termination of the employee in a disciplinary action was immaterial. The company was entitled to the judgment as a matter of law.

Each point of error has been considered and is overruled.

The judgment is affirmed.