Clifford ATTERBURG et al., Plaintiffs,

v.

ANCHOR MOTOR FREIGHT, INC., a corporation organized and existing under the laws of the State of Delaware, Defendant.

Civ. A. No. 1514–73.

United States District Court,
D. New Jersey.

Feb. 3, 1977.

Ralph H. Grebow, Lakewood, N. J., for plaintiffs.

Jamieson, McCardell, Moore, Peskin & Spicer, by Richard A. Ragsdale, Trenton, N. J., Goldfarb & Reznick, by Bernard S. Goldfarb, Cleveland, Ohio, for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

■ This matter comes before the Court upon defendant's motion for summary judgment. Plaintiffs,[1] who are employed by the defendant, Anchor Motor Freight, Inc. as truck drivers, seek to recover both minimum wages and overtime compensation. Plaintiffs contend that the defendant violated the minimum wage provisions of section 16(b) of the Fair Labor Standards Act, as amended, (hereinafter cited as FLSA), 29 U.S.C. § 216(b), in that it failed to compensate them for certain working time. Plaintiffs further allege that the defendant violated various collective bargaining agreements by failing to pay them for

---

1. At the time of the commencement of the suit, there were 102 plaintiffs. On February 25, 1976, an order was entered compelling plaintiffs to answer interrogatories by March 3, 1976. It was further ordered that if any plaintiff failed to so respond, his cause of action would be dismissed. As a result of this order, 66 plaintiffs were subsequently dismissed from the suit.

overtime work in accordance with the terms of said agreements.[2]

Defendant asserts that the plaintiffs are bound, according to the terms of the collective bargaining agreements, to utilize the grievance/arbitration procedure provided for in the agreements. Thus, it is stated that the failure of the plaintiffs to follow this procedure entitles defendant to summary judgment. It is also contended that decisions that have already been rendered regarding disputes that were processed through the grievance machinery, are final and binding. Finally, it is asserted that plaintiffs, as a matter of law, have no minimum wage claim.

There are six contracts which govern the relationship of the parties to this action. There are two National Master Automobile Transporters Agreements (National Agreements), one in effect from June 1, 1970 through August 31, 1973 and the other in effect from September 1, 1973 through May 31, 1976; two Eastern Conference Area Truckaway, Driveaway, Yard and Shop Supplements (Area Supplements), covering the same time periods as the National Agreements; and two Local Riders to the Eastern Conference Supplement (Local Riders), also in effect for approximately the same time periods.

The National Agreements contain detailed provisions regarding grievance and arbitration procedure. Although some of plaintiffs' complaints have been processed through at least some levels of the grievance machinery, the majority of plaintiffs' claims have not been submitted pursuant to the grievance/arbitration procedure contained in the contracts.

■ This case raises a variety of interesting legal issues. It is well settled, however, that "arbitration is a matter of contact and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation*

*Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). *Accord, Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Thus, before these issues can be addressed, it is incumbent upon the Court to resolve the threshold question of whether the plaintiffs' claims are arbitrable grievances within the meaning of the applicable contracts. *See, Hussey Metal Division of Cooper Range Co. v. Lectromelt Furnace Division, McGraw-Edison Co.,* 471 F.2d 556, 557–58 (3d Cir. 1972).

Defendant points to Article 7, section 8 of the National Agreements, which provides:

(a) It is agreed that all matters pertaining to the interpretation of any provision of this National Master Agreement whether requested by the Employer or the Union, must be submitted to the National Automobile Transporters Joint Arbitration Committee, which Committee, after listening to testimony on both sides, shall make a decision.

(b) It is agreed that all matters pertaining to the interpretation of any provision of a Conference (area) Supplement or Local Rider thereto, whether requested by the Employer or the Union, must be submitted to the appropriate Conference (area) Joint Arbitration Committee, which Committee, after listening to testimony on both sides, shall make a decision.

(c) Any decision of any of the Joint Arbitration Committees referred to above, shall be final and conclusive and binding upon the Employer and the Union, and the employees involved.

Section 10 of Article 7 of the 1970–1973 National Agreement further provides that [u]nless otherwise expressly provided in this Agreement, any and all disputes including interpretations of contract provisions arising under, out of, in connection

---

**2.** The claim regarding overtime compensation could not have been brought pursuant to the Fair Labor Standards Act (FLSA) because § 13(b)(1) of the FLSA, 29 U.S.C. § 213(b)(1), exempts motor carriers from the scope of the overtime provisions. Plaintiffs concede this point.

with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of this Agreement.[3]

These provisions appear to be quite broad in scope and application. Plaintiffs, however, make reference to Article 7, Section 1 of the National Agreements which reads as follows:

Any disputes the parties are unable to settle shall be referred to the appropriate Automobile Transporters Joint Conference Arbitration Committee, except for the following direct violations, which are non-disputable:

(a) Nonpayment of the established rates provided for in this Agreement, Supplement or Riders;

 *  *  *  *  *  *

(d) This paragraph does not apply to disputes over the computation of wages or application of rates.[4]

■ Although any doubts as to the meaning of the contract must be resolved in favor of arbitration, *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 583, 80 S.Ct. 1347, these provisions appear to broadly exempt, from the grievance machinery, the type of claims asserted by the plaintiffs. Thus, at least with regard to the disputes which previously have not been processed pursuant to the grievance/arbitration machinery, it is held that plaintiffs' claims are not arbitrable.

It should be noted that defendant contends that a variety of the alleged fact situations fail to give rise to a cause of action under either of plaintiffs' two theories of relief, but rather are simply disputes regarding certain terms of the contracts. Although this contention eventually may be found to be the case, the Court is not willing, at the present time, to sift through the numerous claims to determine which do and which do not give rise to such cause of actions. It is sufficient, at this time, to

note that many of the claims do appear to state such cause of actions and that the contractual exemptions from the grievance/arbitration provisions appear to be co-extensive with both the facts which give rise to a cause of action pursuant to the minimum wage provisions of the FLSA and a cause of action based upon failure to pay overtime compensation in accordance with the applicable collective bargaining agreements, the only two grounds upon which plaintiffs seek relief.

It must now be determined whether disputes, which have been resolved by the use of the grievance machinery, can be the basis of a cause of action when it has been determined that the disputes are not arbitrable.

■ Although arbitration is a matter of contract, "[the] agreement to arbitrate a particular issue need not be express—it may be implied from the conduct of the parties". *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 656 (9th Cir. 1964), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965). The submission of these disputes, without any protest regarding the propriety of the submission until after their final resolution, evidences a consent on the part of the parties involved to abide by the final determination. *See Id.* ; *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.,* 274 F.2d 805, 809 (2d Cir.), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); *Island Creek Coal Sales Co. v. Indiana-Kentucky Elec. Corp.,* 366 F.Supp. 350, 353 (S.D.N.Y.1973). Furthermore, it has been stated that

[a] claimant may not voluntarily submit his claims to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrators to act.

*Ficek v. Southern Pacific Co., supra* at 657. Thus, it appears that any resolution regard-

---

**3.** An identical provision is found in Article 7, Section 11 of the 1973–1976 National Agreement.

**4.** Subsection (d) is found as subsection (e) in the 1973–1976 National Agreement.

ing claims which were processed pursuant to the grievance/arbitration procedure are final and binding.

■ This determination, however, does not resolve the issue. Instead, it raises two other questions. The first involves the issue of whether these claims can be the basis of a cause of action under the FLSA. Without intending any comment upon a situation in which there was no prior submission of the claims to arbitration,[5] this Court adopts the reasoning of the Tenth Circuit Court of Appeals in *Satterwhite v. United Parcel Serv., Inc.,* 496 F.2d 448 (10th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). In that case, the court held that

> when a wage dispute is submitted to arbitration in accordance with a collective-bargaining agreement, the employees may not thereafter maintain an FLSA § 16(b) suit for recovery on the basis of the same factual occurrence as that presented to the arbitrator.

*Satterwhite v. United Parcel Serv., Inc., supra* at 452.[6]

■ The determination that plaintiffs' prior submission of disputes to arbitration preclude them from bringing an action based upon these disputes, pursuant to the FLSA, does not finally resolve the issue regarding the effect of such prior submission. The remaining question, on this issue, which must be resolved is whether plaintiffs' union breached its duty of fair representation, or whether the defendant employer repudiated the contract, thus entitling plaintiffs to bring an action based upon the claims previously submitted to arbitration.[7]

In *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), the United States Supreme Court held that an employee could "obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures" if

> the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and if,* . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to

**5.** In *Iowa· Beef Packers, Inc. v. Thompson,* 405 U.S. 228, 229, 92 S.Ct. 859, 860, 31 L.Ed.2d 165 (1972), the United States Supreme Court had granted certiorari

> to decide whether . . . employees may sue in court to recover overtime allegedly withheld in violation of the Fair Labor Standards Act, if their complaint of alleged statutory violation is also subject to resolution under grievance and arbitration provisions of a collective-bargaining agreement.

The plaintiffs, in that case, had ignored the grievance machinery, and had proceeded directly to court. The Court dismissed the writ of certiorari as improvidently granted due to an interpretation of the contract.

In *Phillips v. Carborundum Co.,* 361 F.Supp. 1016, 1021 (W.D.N.Y.1973), it was held that plaintiffs, who were bringing an action pursuant to the equal pay provision of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., were "not required to exhaust any grievance procedures before prosecuting an action under the F.L.S.A." *See also, U. S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971).

It is interesting to note that the Court, in *Iowa Beef Packers, Inc. v. Thompson, supra* 405 U.S. at 230, 92 S.Ct. at 860 also refused to comment on

> the question whether, although the statutory claim is not subject to contract arbitration, pursuit of the statutory remedy is nevertheless barred because [plaintiffs] might have made the requirement to be on call the basis of a grievance for alleged violation of the lunch period or overtime provision of the collective-bargaining agreement.

**6.** In arriving at that decision, the court declined to extend, to an action under the FLSA, the reasoning of the United States Supreme Court in *Alexander v. Gardner Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), in which it was held that an employee's right to bring an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., is not foreclosed by prior submission of the claim to arbitration.

**7.** The action could be brought pursuant to the FLSA or based upon allegations of breach of contract because the Court deems irrelevant the fact that the cases discussing this issue involved a suit based on an alleged breach of contract. The same considerations which gave rise to this doctrine are similarly applicable to a situation in which the duty has been breached with regard to a set of facts which give rise to a cause of action under the FLSA.

process the grievance. (Emphasis original).

The Court stated that

[a] breach of statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

*Id.* at 190, 87 S.Ct. at 916. It was further explained that an employee had no "absolute right to have his grievance taken to arbitration." *Id.* at 191, 87 S.Ct. at 917.

In *Vaca v. Sipes, supra,* the Court also determined that unfair representation by the union was not the only ground upon which the employee could obtain judicial review even though he did not exhaust the grievance procedure. The second ground was found to arise

when the conduct of the employer amounts to a repudiation of these contractual procedures . . . In such a situation . . . , the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedure as a defense to the employer's cause of action.

*Id.* at 185, 87 S.Ct. at 914 (citation omitted).

In the instant matter, plaintiffs' complaint alleges that

all attempts to recover from the Defendant the overtime wages due and owing through the use of the grievance procedures in accordance with the aforementioned agreements have proven futile and such attempts to utilize such procedures were continually and constantly treated by the Defendant corporation in such a manner as to render the aforementioned procedures useless to any complainant.

This allegation alone is not sufficient to withstand a motion for summary judgment as F.R.Civ.P. 56(e) provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The interrogatories propounded by defendant to plaintiffs contained the following question:

23. Describe in detail any and all attempts you have made to recover unpaid overtime wages due and owed to you under the terms of the labor agreements covering your employment at Anchor Motor Freight which have allegedly proven futile and which attempts were treated by Anchor in such a manner as to allegedly render the grievance procedure useless. For each such attempt state with particularity the date of the attempt, the date of the overtime worked for which you were not compensated, the action taken by you, the response of the company, the name of the company official or officials making this response, the reason why you felt that further resort to the grievance procedure would be futile, and any further action taken by you after the company so responded.

The answer which was uniformly given by each of the plaintiffs was that "[t]he answer to interrogatory # 23 will be supplied subsequent to Plaintiff's inspection of Defendant's documents."

By order of the Court, on February 25, 1976, plaintiffs were given from March 16, 1976 through April 17, 1976, to conduct a further document search. Plaintiffs were then directed to "amend their answers to interrogatories based upon new, additional, or more detailed information resulting from the document search." Plaintiffs' supplementary answers to interrogatories did not contain an answer to interrogatory number 23. On May 13, 1976, depositions were taken of seven of the plaintiffs.[8] Generally,

---

8. At the deposition, it was stipulated between counsel

that without waiving the filing of Supplemental Answers to Interrogatories that the testimony of all the plaintiffs would be substantially the same as those deponents who have testified, who have filed Supplemental Answers, excepting that if any plaintiff who has

the plaintiffs testified that neither the union nor the company impeded their access to the grievance machinery.[9]

Plaintiffs have submitted no affidavits supporting either the allegation of unfair representation or repudiation of contract; nor did they address these issues in their brief in opposition to defendant's motion for summary judgment. Plaintiffs have not presented any concrete facts from which unfair representation by the union or repudiation of the contract by the company, can be inferred. Thus, it is concluded that no material issue of fact has been presented. *See, Hubicki v. ACF Indus., Inc.,* 484 F.2d 519, 526 (3d Cir. 1973); *Alfieri v. General Motors Corp.,* 367 F.Supp. 1393, 1395 (W.D.N.Y.), *aff'd per curiam,* 489 F.2d 731 (2d Cir. 1973).

The final issue which must be resolved involves defendant's contention that plaintiffs have no minimum wage claim as a matter of law. The reasoning behind this argument is that plaintiffs' rate of pay is so greatly in excess of the minimum wage, that even if they were not paid for some working time, their average hourly wage rate, over a week's time, would greatly exceed the minimum wage. Defendant supports this premise by making an analogy to the way in which piece workers are compensated. Plaintiffs argue that this analogy should not control the present situation. Instead, it is argued that the failure to be compensated for working time results in a violation of the minimum wage provisions of the FLSA.

Even if the Court were to accept the rather unusual theory posited by the defendant, it must be noted that no evidence on this issue has been submitted by any of the parties. Thus, summary judgment regarding this issue must be denied as material questions of fact have not been resolved. *See, United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir. 1971).

not testified has filed a written grievance for which they are making a claim in this lawsuit plaintiff's counsel will notify defendant's counsel and such plaintiffs will be produced for examination.

Accordingly, partial summary judgment pursuant to F.R.Civ.P. 56(d) will be granted in favor of the defendant with regard to disputes previously submitted pursuant to the grievance/arbitration procedure. In all other respects, defendant's motion for summary judgment is hereby denied.

Submit an order.

(Dep. at 125).

9. See Dep. at 12–13, 17–18, 54, 59, 68–69, 86, 92, 100, 107, 112–13.