Harvey E. THOMPSON, Appellant,

v.

MONSANTO COMPANY, Appellee.

No. 1593.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 30, 1977.

Russell G. Burwell, James P. Simpson, Simpson, Morgan & Burwell, Texas City, for appellant.

Preston Shirley, Mills, Shirley, McMicken & Eckel, Galveston, for appellee.

J. CURTISS BROWN, Chief Justice.

This is a suit in which the appellant seeks recovery under the provisions of article 8307c of the Texas Workmen's Compensation Act for wrongful discharge. In October 1969, Harvey E. Thompson (appellant or Thompson) suffered spinal injuries while working within the scope of his employment for Monsanto Company (appellee or Monsanto). After filing his workmen's compensation claim in 1971 with the Industrial Accident Board, he was awarded compensation. In July 1972, this award was appealed by Liberty Mutual Insurance Company, the workmen's compensation carrier for Monsanto. Appellant cross-acted for compensation benefits. The jury found appellant totally and permanently disabled and judgment for him was rendered accordingly. In July 1973, shortly after the trial, Monsanto terminated appellant's employment. Appellant filed a grievance asking to be reinstated, and his union exercised the right to arbitrate the discharge, claiming that appellant's employment was terminated for bringing the workmen's compensation claim and recovering a favorable jury verdict. The arbitrator found that appellee was justified in discharging appellant since, due to the extent of his injury, appellant

could not safely perform his job, or any job within his classification and seniority.

Thereafter, appellant filed this suit in the district court under article 8307c, alleging that his discharge was due to his good faith effort to pursue his workmen's compensation claim. Article 8307c provides:

Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

Sec. 3. The district courts of the State of Texas shall have jurisdiction for cause shown, to restrain violations of this Act.

Tex.Rev.Civ.Stat.Ann. art. 8307c (Supp. 1976–77). Monsanto answered by general denial and alleged that appellant was estopped to assert his claim in the district court since he elected to pursue arbitration, and, under the collective bargaining agreement, the arbitrator's decision was final and binding. The parties agreed to a hearing on the stipulated facts concerning appellee's defense that the arbitration decision was final and precluded further litigation. The parties stipulated that all procedural requirements with respect to arbitration were properly followed. The trial court found that under the stipulated facts, appellee was entitled to judgment.

On appeal, appellant argues that the arbitration could not divest the district court of jurisdiction conferred by article 8307c and would be against public policy since it would deprive appellant of a judicial determination of his case. The question thus presented on appeal is a novel one in this jurisdiction, insofar as we can determine:

may an employee be deprived of his state statutory remedy under article 8307c because he received an adverse ruling in an arbitration procedure conducted under a collective bargaining agreement? The parties stipulated that Monsanto is a corporation engaged in interstate commerce and is subject to the provisions of the Labor Management Relations Act (Taft-Hartley Act) § 301(a), 29 U.S.C. § 185(a) (1970).

■ Section 301(a) of the act gives federal district courts jurisdiction over suits for violation of collective bargaining agreements. It has been said that the provision authorizes federal courts to fashion a body of uniform national labor law for enforcement of these agreements. *See Textile Workers Union v. Lincoln Mills of Ala.,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Goodyear Tire & Rubber Co., etc. v. Sanford,* 540 S.W.2d 478 (Tex.Civ.App.-Houston [14th Dist.] 1976, no writ). In drafting the section, Congress was concerned that unions as well as employees should be bound to collective bargaining contracts. Federal labor policy requires employees asserting contract grievances to attempt to use grievance processes agreed upon in the contract as the mode of redress. *Republic Steel Corporation v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *McBride v. Beaumont City Lines, Inc.,* 356 S.W.2d 395 (Tex.Civ.App.-Beaumont 1962, writ dism'd). An employee should not be allowed to sidestep available grievance procedures, since if such procedures could not be made exclusive, such conduct would exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements. *Republic Steel Corporation v. Maddox, supra.* Moreover, under section 203(d) of the Labor Management Relations Act, Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the common law of the plant:

Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-

bargaining agreement. The Service is directed to make its conciliation and mediation services available in the settlement of such grievance disputes only as a last resort and in exceptional cases.

Labor Management Relations Act (Taft-Hartley Act) § 203(d), 29 U.S.C. § 173(d) (1970). It has been held, then, that courts will not review the merits of an arbitration award and interpret collective bargaining contracts. *United Steelwkrs. of A. v. Enterprise W. & C. Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelwkrs. of Am. v. Warrior & Gulf N. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelwkrs. of Amer. v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167 (5th Cir. 1971); *Mills v. Braniff Airways, Inc.,* 527 S.W.2d 838 (Tex.Civ. App.-Eastland 1975, no writ). To give courts such authority would undermine the federal policy of settling labor disputes. *United Steelwkrs. of A. v. Enterprise W. & C. Corp., supra.* The function of the court is limited to ascertaining whether the claim is arbitrable under the contract. *United Steelwkrs. of Amer. v. American Mfg. Co., supra.*

There are exceptions, however, to the general rule requiring an aggrieved employee to pursue his contractual remedy before resorting to the courts. Under the general rule, if the union wrongfully refuses to pursue the employee's claim through arbitration, then the employee is prevented from exhausting his contractual remedy, and is left without a remedy. The Supreme Court has stated, therefore, that where a union, as bargaining agent, breaches its duty of fair representation in handling the claim by acting arbitrarily, discriminatorily, or in bad faith, the employee may bring suit in the courts under § 301(a) for wrongful discharge, and will not be subject to the defense of failure to exhaust his contractual remedies. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *accord, Duckstein v. General Dynamics Corp., Fort Worth Div.,* 499 S.W.2d 907 (Tex.Civ.App.-Fort Worth 1973), *cert. denied,* 419 U.S. 835,

95 S.Ct. 61, 42 L.Ed.2d 61 (1974). The Court has also held that the judicial remedy for collection of seamen's wages and resulting penalties, provided by 46 U.S.C. § 596, is an alternative to the arbitration process contemplated under section 301. *U. S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). Recognizing the apparent conflict between the two sections and that section 301 is silent as to abrogation of existing statutory remedies, the Court in *Arguelles* reasoned that section 301 was not intended to replace the long established remedies of seamen under section 596, but merely to create an *optional* remedy. *Id.* This exception creating an optional remedy has been extended to suits under the Fair Labor Standards Act. *Leone v. Mobil Oil Corporation,* 173 U.S. App.D.C. 204, 523 F.2d 1153 (1975).

While federal labor policy may have recognized alternative remedies in these narrow areas, the employee is required to elect between the two, and may not take advantage of both. In *Suissa v. American Export Lines, Inc.,* 507 F.2d 1343 (2d Cir. 1974), the Second Circuit held that where a seaman has chosen to exhaust grievance procedures, he is precluded from subsequently bringing suit under section 596. The claimant has no right to an independent judicial determination of the merits of his grievance unless he establishes a union breach of its duty to fair representation. Such a rule would negate the desired finality to grievance arbitration procedures. Employers would have little reason to rely upon the terms of a settlement agreement, and unions would be stripped of their role in administrating and negotiating contractual terms. *Id.* at 1347–48. This limitation has also been extended to bar suits under the Fair Labor Standards Act. *See Satterwhite v. United Parcel Service, Inc.,* 496 F.2d 448 (10th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974); *Atterburg v. Anchor Motor Freight, Inc.,* 425 F.Supp. 841 (D.N.J. 1977).

In *Haynes v. United States Pipe & Foundry Company,* 362 F.2d 414 (5th Cir. 1966), the Fifth Circuit held that under

*Republic Steel Corporation v. Maddox, supra; Union News Company v. Hildreth,* 295 F.2d 658 (6th Cir. 1961), *cert. denied,* 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963); and *Simmons v. Union News Company,* 341 F.2d 531 (6th Cir.), *cert. denied,* 382 U.S. 884, 86 S.Ct. 165, 15 L.Ed.2d 125 (1965); final grievance processes should constitute an affirmative defense to suits for wrongful discharge brought under section 301(a). *Accord, Lomax v. Armstrong Cork Company,* 433 F.2d 1277 (5th Cir. 1970); *Davis v. Howard,* 404 F.Supp. 678 (N.D.Ga.1975) (suit brought under 42 U.S.C. §§ 1981, 1983 and 1985(3); *see Chapel v. Southwestern Bell Telephone Company,* 520 S.W.2d 592 (Tex.Civ.App.-Fort Worth 1975, no writ). This policy of precluding employees who have pursued their claims through final and binding grievance or arbitration from then having their claims litigated in the courts is supported by other authorities. 8 Federal Regulation of Employment Service, *Contracts* § 67:126 (1977); Jones, *Compulsion and the Consensual in Labor Arbitration,* 51 Va.L.Rev. 369, 375 (1965).

We note that the Supreme Court has created an exception to this limitation where discrimination in employment practices is involved. In *Alexander v. Gardner-Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that an employee could bring suit under Title VII of the 1964 Civil Rights Act charging racial discrimination in employment practices, even after submitting the grievance to final arbitration. It has also been held that arbitration does not preclude review by the National Labor Relations Board. *Carey v. Westinghouse Electric Corporation,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). It is clear, then, that except for a few narrow exceptions, federal law dictates that prior binding grievance or arbitration remedies can be successfully alleged by an employer as an affirmative defense against an employee who sues for wrongful discharge under section 301(a).

■ The question remains, however, whether a distinction should be made in the present case due to the fact that appellant has sued under article 8307c, rather than section 301(a); that is, does this specific state statute allow a trial on the merits after an adverse arbitration decision? We believe that, where applicable, federal law controls and preempts this field. The Supreme Court has held that principles of federal labor law must be paramount over incompatible state laws in the area covered by section 301. *Local 174, Teamsters, etc. v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *see Goodyear Tire & Rubber Co., etc. v. Sanford, supra.* In *Lucas Flour,* suit was brought in a Washington state court for damages sustained by an employer because of a strike prior to arbitration in violation of the collective bargaining agreement. The Washington Supreme Court held that it could decide the case based on local law. The United States Supreme Court held, however, that federal law must prevail in order to insure a uniform and comprehensive labor policy:

> The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

*Id.* at 103–04, 82 S.Ct. at 577. *See Textile Workers Union v. Lincoln Mills of Ala., supra; Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483

(1962); *Papadopoulos v. Sheraton Park Hotel,* 410 F.Supp. 217 (D.D.C.1976); *Chapel v. Southwestern Bell Telephone Company, supra; Oil, Chemical & Atomic Wkrs. Int. U. v. Lone Star Pro. Co.,* 332 S.W.2d 151 (Tex. Civ.App.-Amarillo 1959, writ ref'd n.r.e.). We hold, then, that while our courts may entertain suits under article 8307c, substantive federal law has preempted the field of labor policy and, where applicable, must be applied in the face of incompatible state law. *See generally,* 8 Federal Regulation of Employment Service, *Contracts* § 67:2 (1977); Mendelsohn, *Enforceability of Arbitration Agreements Under Taft-Hartley Section 301,* 66 Yale L.J. 167, 187–94 (1956).

We hold that the trial court was correct in finding for the appellee based on its affirmative defense of final arbitration. Appellant has neither complained of the union's failure to fairly represent him under *Vaca v. Sipes,* nor brought suit under Title VII of the Civil Rights Act alleging racial discrimination. In short, appellant has admitted that all proper grievance and arbitration procedures were followed, in a case governed by federal labor law. The judgment of the trial court must therefore be affirmed.

Affirmed.