**CARNATION COMPANY, Appellant,**

v.

**Willie Ellis BORNER, Appellee.**

**No. B1969.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Aug. 15, 1979.

Rehearing Denied Sept. 5, 1979.

Ron D. Daugherty, Barlow, Lacy, Smith & Pollard, Houston, P. Anthony Burnham, Los Angeles, Cal., for appellant.

Laron D. Robinson, W. Michael Leebron, II, Leebron & Robinson, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and COULSON and CIRE, JJ.

COULSON, Justice.

This is a suit for the recovery of damages due to wrongful discharge of an employee under Article 8307c of the Texas Workmen's Compensation Law, Tex.Rev.Civ.Stat. Ann. article 8307c (Supp.1978). Appellant Carnation Company, defendant below, appeals from a judgment in favor of appellee Borner, plaintiff below. We affirm the judgment of the trial court.

Appellee Borner was employed by the appellant Carnation Company in 1955 and continued in that employment until his discharge on August 10, 1973. His job with Carnation at the time of his discharge was that of a milk-loader. While performing his duties as a milk-loader, Borner was hit by a stack of falling crates in October of 1971, and injured his shoulder. In March of 1973, another stack of crates fell on Borner, reinjuring his shoulder and causing him to be off the job until May 14, 1973, when he was released to return to work by his physician and did return to his same job. Following his 1973 injury Borner hired a lawyer and filed a workmen's compensation claim for both his 1971 and 1973 injuries. This claim was settled by a compromise settlement agreement following a prehearing conference before the Industrial Accident Board and Borner received a lump sum cash settlement. Carnation terminated Borner as an employee on August 10, 1973, some two days after the settlement agreement was approved by the Industrial Accident Board. Borner had been back on the job since May 14, 1973, with no complaints filed by Carnation about his job performance, although he had had some absences in the interim, but the reason given by Carnation for discharging him was that he was "Physically unable to perform assigned work."

After his discharge Borner reported the facts of his discharge to his union which filed a grievance on his behalf with Carnation. The written grievance contended that Borner's discharge was "unjust and contractually illegal" and requested that Borner be reinstated and be reimbursed for his lost benefits. Apparently Carnation did not respond to the grievance for a long period of time, although its contract with the union specified that the Company and the Union should meet promptly to settle any griev-

ance,[1] because R. B. Moon, Secretary-Treasurer of the Union, wrote twice more to Carnation's General Manager requesting that Carnation comply with the grievance procedure and reply to Borner's grievance. The first of these follow-up letters was dated October 4, 1973, and the second was dated December 4, 1973. Carnation responded in a letter dated January 2, 1974, which stated:

The company agrees for a period of one (1) year, effective from August 10, 1973, to allow Mr. Borner to return to work at such time that in our opinion he is physically able to perform heavy duty work.

Upon receiving this letter, Borner testified, he went to Moon, his Union Representative, and asked what the letter meant. He stated that Moon told him that he (Moon) did not know what the letter meant and told Borner to see his own lawyer. It is undisputed that no further action on Borner's grievance was ever taken by the Union or by Carnation. On July 16, 1975, one and one-half years after the letter from Carnation was written, Borner filed this suit claiming that his discharge violated Tex. Rev.Civ.Stat.Ann. art. 8307c (Supp.1978) which is entitled "Protection of Claimants from Discrimination by Employers; Remedies . . ." and provides in pertinent part:

Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

Carnation filed, inter alia, a cross action against and a motion for leave to join the Union as a third party defendant in this suit. This cross-action was based upon allegations that the Union violated its duty of fair representation under the National Labor Relations Act. This motion was granted, whereupon the Union petitioned for removal of the entire case to Federal Court. Upon motion by Carnation the United States District Court for the Southern District of Texas, Houston Division, remanded Borner's cause of action against Carnation to the District Court of the State of Texas, but retained jurisdiction of Carnation's cause of action against the Union.

In state court Carnation made a motion for summary judgment which was denied. Borner's cause of action was tried to a jury which found that Carnation violated Article 8307c, Section 1, with respect to Willie Borner; that no settlement was reached on the grievance filed by Willie Borner, and that Carnation acted willfully and maliciously in discharging or otherwise discriminating against Willie Borner. The jury awarded damages in the amount of $24,768.00 for lost wages between August 10, 1973 and the time of trial, $52,000.00 for loss of wages Borner would probably incur in the future, and $44,000.00 for retirement and other benefits Borner would have been entitled to had he continued to work for Carnation. In addition the jury awarded $60,000.00 as exemplary damages. After denying Borner's trial amendment to increase the amount of damages pled, the trial court entered judgment on the verdict in the amount of $100,000.00, the total amount of damages pled for by Borner in his first amended petition. Carnation appeals from that judgment.

1. Section 8.4 of the collective bargaining agreement provided:

8.4 *Processing of Grievance.* The Company and the Union shall meet promptly to settle any grievance filed. If they are unable to settle the written grievance within ten (10) calendar days, the Union may invoke arbitration and name its representative. Within five (5) days after the Union has named its representative, the Company shall name its representative, and the two shall attempt to settle the grievance, or to agree on an impartial arbitrator, within five (5) days.

In its first point of error Carnation contends that the trial court erred in denying Carnation's motion for summary judgment under this court's holding in *Thompson v. Monsanto,* 559 S.W.2d 873 (Tex.Civ. App.—Houston [14th Dist.] 1977, no writ). This point of error further urges that it was error to fail to instruct the jury that Borner's cause of action was foreclosed if it found that there existed in the contract between the Union and Carnation a "final and binding grievance and arbitration procedure" and that Borner failed to pursue "that exclusive remedy under his collective-bargaining agreement." We would first note that this is an appeal from a judgment resulting from a jury trial on the merits. The denial of such a motion for summary judgment is interlocutory in nature and is not appealable. *Southwestern Materials Co. v. George Consol., Inc.,* 476 S.W.2d 454 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.).

Carnation's argument under this first point of error contends that this case is governed by our holding in *Thompson v. Monsanto, supra.* In the *Thompson* case the plaintiff, an employee who was injured within the scope of his employment, was awarded compensation under the Workmen's Compensation Act and was subsequently discharged from his employment. He filed a grievance asking to be reinstated and his Union exercised its right to arbitrate that grievance. The arbitrator found that the employer was justified in discharging the plaintiff since the extent of his injury precluded the plaintiff from safely performing any job within his classification and seniority. The employee subsequently filed suit in district court claiming that his discharge was due to his good faith effort to pursue his workmen's compensation claim and thus constituted a violation of Article 8307c. Monsanto asserted, as an affirmative defense to Thompson's suit, that the plaintiff had elected to pursue his claim to arbitration and, under the collective bargaining agreement, the arbitrator's decision was final and binding and therefore precluded further litigation. On appeal from a judgment in favor of Monsanto

we concluded that an employee who has received an adverse binding arbitration award under a collective bargaining agreement was thereby precluded from bringing suit in state court under Article 8307c on the same claim of unlawful discharge.

Our opinion in *Thompson v. Monsanto* contains an in depth review of the federal and state cases which bear on the problem. Those cases led us to the conclusion that the policy of federal labor law requires employees to "attempt to use grievance processes agreed upon in the contract as the mode of redress" for grievances. *Thompson v. Monsanto Co., supra* at 874. The use of grievance procedures is the preferred method for "settling disputes and stabilizing the common law of the plant," *Thompson v. Monsanto Co., supra* at 874. We further held that when "final grievance processes" have been exhausted by the aggrieved employee he

"has no right to an independent judicial determination of the merits of his grievance unless he establishes a union breach of its duty to fair representation. Such a rule would negate the desired finality to grievance arbitration procedures. Employers would have little reason to rely upon the terms of a settlement agreement . . ."

if the matter could be relitigated in court. Therefore we applied the policy of precluding employees "who have pursued their claims through *final and binding* grievance and arbitration from then having their claims litigated in the courts" (emphasis added) to suits under Article 8307c because we determined that "where applicable" federal labor law preempted the field of labor policy and must be applied in the face of an incompatible state law. Therefore we held Monsanto's affirmative defense of final arbitration under the labor contract operated to preclude the employee's suit in state court under Article 8307c.

Appellee Borner's position is different from that of the plaintiff in *Thompson v. Monsanto Co.* Borner complied with federal labor policy and with the applicable contract in "attempt[ing] to use the griev-

ance procedures" under that contract. He followed all procedures specified therein for an employee's filing of a grievance after he has been discharged. Once he had done so the processing of his grievance was in the hands and under the control of the union and the employer, Carnation Company. No arbitration procedure was invoked by either of them and no "final and binding" arbitration decision was obtained. Furthermore the jury found that no final settlement of the grievance was reached at any earlier stage in the grievance process. In fact no resolution of Borner's grievance was ever reached. We are unwilling to hold either that the existence of a labor contract containing provisions for a grievance procedure or the mere filing by an aggrieved employee of a grievance pursuant to that procedure operate as a matter of law to deny the individual employee his rights under a state statute which expresses the state's public policy of protecting its important interest in insuring that its workmen's compensation law can function to the benefit of its intended beneficiaries, employees, without coercion or unjust treatment from their employers as a result of exercising their rights under that law.

We therefore hold that although the existence of a final and binding arbitration award or the existence of a final settlement of an employee's grievance at a stage in the process prior to the invocation of the arbitration procedure would preclude a suit under Article 8307c by that employee, the mere filing of such a grievance, which is not resolved under the applicable contract procedures, does not have that effect. The remedies available to an employee who is terminated by his employer for the good faith exercise of his rights under the workmen's compensation law remain available to him under that statute in a situation where his grievance was properly filed by him but was not resolved through efforts of the Union and the employer.

We emphasize that our holding applies only to suits under Article 8307c and does not in any way intend to alter the requirements dictated by federal law for suits for unjust discharge based upon the labor contract itself. *See Chapel v. Southwestern Bell Telephone Company,* 520 S.W.2d 592 (Tex.Civ.App.—Fort Worth 1975, no writ); *Duckstein v. General Dynamics Corp., Fort Worth Div.,* 499 S.W.2d 907 (Tex.Civ.App.—Fort Worth 1973) cert. denied 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974).

In its second point of error Carnation asserts that Special Issue number 1 was improperly submitted because of its "vagueness, ambiguity, and duplicitousness (sic)." Special Issue number 1 was submitted as follows:

Do you find from a preponderance of the evidence that Carnation Company violated Article 8307(c), Section I with respect to Willie Borner?

Carnation's argument under this point of error apparently contends that it was entitled to have each element of the statute submitted individually in separate special issues. All of the cases cited by Carnation to support its position were decided prior to the 1973 amendment of Rule 277, Tex.R. Civ.P. which now provides, in pertinent part:

It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues.

Special Issue number 1 is a permissible mode of submitting the plaintiff's claim in this Article 8307c case under Rule 277. *See State v. Norris,* 550 S.W.2d 386 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). This is particularly true because, contrary to what Carnation apparently claims, Borner would be entitled to prevail should the jury find he was discharged because he took any *one* of those actions (filing a workmen's compensation claim, hiring a lawyer to represent him in a claim, instituting a proceeding under the Texas Workmen's Compensation Act, or testifying in any such proceeding) specified in Section I of that statute. Borner pled and offered evidence that each of these actions was

taken by him prior to his discharge. Therefore there was support for submission of all those elements of Article 8307c to the jury and the broad form of submission used by the trial court was not error. Carnation's second point of error is overruled.

In its third point of error Carnation objects to the submission of Special Issue number 2 which inquired:

Do you find from a preponderance of the evidence that a settlement was reached on the grievance filed by Willie Borner?

Carnation contends that it was entitled to an additional instruction in connection with this issue as to whether either Borner or his Union had failed to pursue his grievance to arbitration. Carnation's brief states that this issue was "critical to Appellant-Defendant's defense" since Carnation maintained that it "was entitled to a verdict upon a finding that either Borner or the Union failed to pursue the grievance to the final step, the arbitration process."

■ Under our holding under Carnation's first point of error herein such an instruction would not have constituted an affirmative defense to Borner's cause of action. Carnation pled as an affirmative defense that the grievance had been settled or resolved, not that it had been filed but not processed to arbitration. The jury was asked to determine whether the grievance had been settled. A further finding on whether it had been pursued to arbitration would have been unnecessary for there was no claim made or evidence presented that arbitration had been invoked. Appellant's third point of error is overruled.

■ Carnation's fourth point of error contends that it was improper for the trial court to submit special issues dealing with exemplary damages. We note that the only objection made to these special issues at trial and therefore the only complaint preserved for appeal, was that such damages were "not properly recoverable under an 8307(c) [8307c] action." Article 8307c Section II delineates the remedies available to one who is a victim of the actions prohibited by Section I of that statute:

A person who violates any provision of Section I of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation . . . .

Carnation cites us to no authority, nor have we discovered any which indicates that "reasonable damages" under Article 8307c may not, in a proper case, include exemplary or punitive damages. Carnation's fourth point of error is overruled.

In its fifth point of error Carnation complains of the submission of special issue number four which permitted the jury to find and award Borner elements of future damages. Carnation's only objection made at trial which has been preserved for appeal was that future damages are not recoverable in an action under Article 8307c. We find that the "reasonable damages" specified in Article 8307c may include damages to be incurred in the future in a proper case. Carnation's fifth and final point of error is also overruled.

■ Appellee Borner has urged two cross-points of error. In the first he complains of the trial court's denial of his twice-offered trial amendment which sought to increase the amount of damages alleged in his petition from $50,000.00 in actual damages and $50,000.00 in exemplary damages to $150,000.00 in actual damages and $50,000.00 in exemplary damages. The question of whether to permit the filing of a trial amendment is addressed to the sound discretion of the trial court and his order will not be disturbed unless the complaining party makes a clear showing that the court abused his discretion. *Vermillion v. Haynes,* 147 Tex. 359, 215 S.W.2d 605 (1948). Borner made no showing at trial of any reason why he could not have amended his pleading to increase the amount of damages within the time allowed for amendment to pleadings without leave of court. *See Fry v. Guillote,* 577 S.W.2d 346 (Tex. Civ.App.—Houston [14th Dist.] 1979, writ ref'd n. r. e.). Carnation was entitled to rely upon the maximum claim made by Borner in his first amended petition. Furthermore there was no trial by consent or

waiver merely because the cumulative evidence on damages would add up to a sum greater than that sought by Borner in his first amended petition. *Williams v. General Motors Corporation,* 501 S.W.2d 930 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.). We do not find any abuse of discretion in the trial court's action in refusing to allow Borner's trial amendments.

Borner's second cross-point deals with the exclusion of certain evidence. This point has become immaterial in view of the fact that we are affirming the judgment of the trial court in favor of Borner. *See Texas Steel Co. v. Douglas,* 533 S.W.2d 111 (Tex. Civ.App.—Fort Worth 1976, writ ref'd n. r. e.). We overrule both of Borner's cross-points of error.

The judgment of the trial court is affirmed.

CIRE, J., not participating.