**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL # 2359, Appellant,**

v.

**The CITY OF EDMOND, Oklahoma, a municipal corporation, and Bill Dashner, City Manager of the City of Edmond, Oklahoma, Appellees.**

No. 52273.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 12, 1980.

Rehearing Denied Sept. 23, 1980.

Certiorari Denied Nov. 17, 1980.

Released for Publication by Order of Court of Appeals Nov. 17, 1980.

Brogden & Behrens, Inc., by Verland E. Behrens, Oklahoma City, for appellant.

Mary Ann Karns, Edmond, for appellees.

ROMANG, Judge:

In this action the International Association of Firefighters, Local # 2359 (Union) sought a writ of mandamus compelling the City of Edmond (City) to arbitrate a grievance arising under an expired collective bargaining contract. The District Court denied the writ and the Union appealed.

The parties had a collective bargaining contract sanctioned by the Fire and Police Arbitration Act, 11 O.S.Supp.1979, § 51–101 et seq. This contract ran from July 1, 1975 to June 30, 1976 and could be extended for one year by agreement of the parties, which it was, i. e. to June 30, 1977. The contract contains an internal grievance procedure but no third party mediation or fact finding as contemplated by 11 O.S.Supp.1979, § 51–111. We agree with the Union that the Supreme Court has interpreted § 51–111 (then numbered § 548.1) to require third party arbitration under §§ 51–107 through 51–110 in the absence of a negotiated process. *City of Midwest City v. Harris*, Okl., 561 P.2d 1357 (1977). Thus throughout the contract period the City was under a duty to arbitrate disputes arising out of the "interpretation or application of any of the provisions of . . . [the collective bargaining contract] or the actions of any of the parties thereunder."

Under the contract a new employee was in a probationary status for six months. In May, 1977, during the contract term, the City Manager of the City unilaterally, and in apparent violation of the contract, increased the probationary period to one year. But no grievance or demand for arbitration was filed as a result of this change.

The subject of the alleged grievance, Philip Tucker, completed six months service on August 28, 1977 (after the contract had expired and before the new one was executed). He was discharged January 13, 1978, after less than one year of service. It is his discharge which is the subject of the demand for arbitration. Arguably the new contract requires one year probationary service.

The parties' briefs are virtually devoid of authority and seek to argue the merits of the contract dispute. The only issue tendered to the District Court was whether or not to mandate arbitration as the method of determining the meaning of the contract. For this purpose, we must determine whether the proffered issue is one which the parties are obligated to arbitrate. If so the mandate should issue and if not, the writ should be denied.

The issue is new in Oklahoma but not to courts generally. Under federal labor policy an agreement to arbitrate survives the expiration of the collective bargaining contract *as to disputes arising during the term of the contract.* See *e. g. Truck Drivers Local Union No. 807 v. Bohack Corp.,* 541 F.2d 312 (2nd Cir. 1976) *cert. denied* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117. Similarly under state public employee bargaining laws the question is whether the dispute as to the contract's meaning arose at a time when the parties were contractually bound to arbitrate. See *e. g. Jennings v. St. Elizabeth Hospital,* 54 A.D.2d 607, 387 N.Y.S.2d 327 (Sup.Ct.App.Div.1977) and *Pennsylvania Labor Relations Board v. Williamsport Area School District,* 370 A.2d 1241 (Pa. Comm.Ct.1977) rev'd on other grounds *Pennsylvania Labor Relations Board v. Williamsport Area School District,* 406 A.2d 329 (Pa.1979). Great care must be taken in using cases from other jurisdictions in the labor relations field. Federal labor policy serves different ends in the private sector than our own Fire and Police Arbitration Act. Particularly, behind the federal cases is a broad policy preferring arbitration of grievances stated in the so-called Steelworkers' Trilogy, *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Such a pronouncement depended heavily on the goals of federal labor policy and the particular legislative history. Our more limited statute does not necessarily share all those goals and lacks the specific legislative history. Moreover, it seems that our legislation is expressly neutral on the value of arbitration, 11 O.S.Supp.1979, § 51–101 D, except in the absence of an agreed upon process, § 51–111. *Cf.* 15 O.S.Supp.1979, § 818 where employee–employer relations are excluded from the scope of the Uniform Arbitration Act. But we need not go as far as the Pennsylvania court in *Williamsport, supra,* at 1243 where they hold the federal cases were of "little value at all." Where the policies and interests are sufficiently parallel we can be advised and informed by the federal courts' experiences.

Likewise, the use of state court decisions interpreting their own public sector labor statutes, while helpful, must be used with care. Their statutes may reflect quite different policies and their interpretations may reflect different circumstances that must be noted. But again they ought not be ignored, especially as we struggle with difficult interpretive problems of a relatively new and important statute. We must assume that the legislature that enacted the Act was aware of the experiences in other states.

■ We find on analysis that the cases cited reasonably support the proposition that even under 11 O.S.Supp.1979, § 51–111 the duty to arbitrate expires with the contract which expressly or by silent adoption of the legislative alternative in § 51–111 brought the duty into existence.

■ Unfortunately, that does not end our controversy. The Union is seeking arbitration of an allegedly illegal discharge of what it considers became a permanent employee in August, 1977. The allegedly illegal discharge occurred in January, 1978.

Under the contract then existing there was no negotiated means of dispute resolution so arbitration under § 51–111 became a part of the contract. By virtue of the contract *and* § 51–111 the parties had a duty to arbitrate questions involving "the interpretation or application" of the provisions of the contract. This duty binds the parties to the decision of the arbitrators on the meaning of the contract. It is an arbitration board's interpretation the parties are bound to and not that of the courts. In this we agree with the U. S. Supreme Court in the Steelworkers' Trilogy cited above. To judge whether the "interpretation and application" of existing contractual obligations protects Mr. Tucker or not is precisely what ought to be arbitrated. Instead this was decided by the District Court on the ground it was not ambiguous. This decision is for the arbitrator and not the court. *Cf. Candor Central School District v. Candor Teachers Ass'n,* 42 N.Y.2d 266, 397 N.Y.S.2d 737, 366 N.E.2d 826 (N.Y.Ct.App.1977).

The decision below must be remanded with directions to issue the writ requested.

REVERSED AND REMANDED WITH DIRECTIONS.

REYNOLDS, P. J., concurring.