**PEABODY GALION, a division of Peabody International Corporation, Appellant,**

v.

**A. V. DOLLAR, et al., Appellees.**

**No. 81–1391.**

United States Court of Appeals, Tenth Circuit.

Dec. 11, 1981.

Rehearing Denied Feb. 24, 1982.

Ben A. Goff, Oklahoma City, Okl., for appellees.

Before HOLLOWAY, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Peabody Galion, a division of Peabody International Corporation, here appeals a judgment entered by the United States District Court for the Eastern District of Oklahoma, which denied its motion for summary judgment.[1] The appeal challenges this order of the trial court. Thus, appellant maintains that as a matter of law it is entitled to prevail in the case.

The facts briefly stated are these:

Peabody Corp. operates a garbage truck body manufacturing plant in Durant, Oklahoma. This plant employs one to three hundred workers, depending on economic conditions. Plant workers are represented by a union, Local 2494 of the International Association of Machinists and Aerospace Workers AFL–CIO.

In August of 1978 the Company and the Union entered into a collective bargaining agreement. This provided for employee rights and responsibilities and for certain contingencies such as disabling injuries to employees.[1a] Also established was a grievance procedure and mandatory binding arbitration for disputes arising under the agreement's terms.

---

Kent F. Frates, Ellis & Frates, Oklahoma City, Okl., for appellant.

1. The appeal was an interlocutory one which followed the grant by this court of permission to so proceed on March 25, 1981, pursuant to 28 U.S.C. § 1292(b).

1a. Regarding disabled or handicapped employees, Article XV of the agreement provided, in pertinent part:

A. Employees who are disabled or handicapped as a result of an illness or injury may be assigned to jobs which their medical history indicates they are able to perform, subject to the following conditions and in the following order:

1. Employee may be assigned to any job which is available within his department to which his seniority entitles him at the same and then lower job classes.

2. Employee may be assigned to any job which is available within the plant to which his seniority entitles him at the same and then lower job classes.

* * * * * *

5. If the disabled or handicapped employee cannot be placed according to the above provisions, due to a non-occupational illness or injury, he shall assume a lay-off status until such time as he might be placed. If due to an occupational illness or injury, he shall be placed on a Workman's Compensation Leave until such time as he might be placed.

6. In the event a disabled or handicapped worker assigned in accordance with 1, 2, above or on lay-off or leave in accordance with 5, above, and, who comes under the provisions of this Article because of occupational or non-occupational illness or injury,

The dispute grew out of the fact that Peabody used the provisions set forth in footnote 1 to place some thirty-four of its employees on workman's compensation leave. This occurred in February and March, 1980. All thirty-four of the employees that were laid off had indeed filed claims and had been found partially disabled by the Oklahoma Workers' Compensation Court. The workmen's compensation leaves amount to discharges, because the employees' nominal right to continue working in suitable low-risk jobs was vitiated by Peabody's determination that there were no vacant low-risk positions. If the Peabody company is correct in its contentions here, the employee who seeks workmen's compensation insurance is trapped because he is invariably subject to dismissal. The workers placed on leave claimed that they were wrongfully discharged, and filed grievances seeking arbitration under the collective bargaining agreement. The cases of two of the workers were actually arbitrated; the decisions were in favor of Peabody. Thereafter, three of the workers filed a diversity action in the United States District Court for the Eastern District of Oklahoma, alleging wrongful discharge in violation of Oklahoma law. The plaintiffs—later joined by the other workers as intervenors—sought injunctive relief and compensatory and punitive damages. They cited Okla.Stat. Tit. 85, §§ 5–7 (Supp.1980), which authorizes the maintenance of an action for damages against any employer who discharges an employee because a workers' compensation claim was filed.[2]

In response Peabody filed a motion for summary judgment, urging that the plaintiffs and intervenors had already elected to pursue the exclusive remedy of arbitration and therefore could not file suit in court. The trial court's denial of that motion provoked the instant appeal.

The issue before us must be determined by Oklahoma law under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) since it is a substantive matter. The Oklahoma legislature adopted the statutory cause of action relied upon by appellees. In so doing it evidenced some intention to find that persons who are discharged following the filing of workmen's compensation claims are entitled to some remedy. In addition the Supreme Court of Oklahoma has upheld the statute against a challenge to the jurisdiction of state courts to hear cases brought under it. *WRG Construction Co. v. Hoebel*, 600 P.2d 334 (Okl. 1979).

Issues of federal preemption and exclusivity of remedies complicate the instant inquiry, however. The contention of Peabody is that the collective bargaining agreement is based upon the National Labor Relations Act and that the issue is whether or not the presence of this remedy is exclusive and prevents appellees from bringing an action under the Oklahoma statute. Because the Oklahoma courts have not addressed that issue, this court is called upon to decide the case as it believes the Oklahoma courts would.

Peabody maintains that this is a grievance which arose under the terms of the

recovers sufficiently to return to his regular job, he shall automatically return to it providing he has sufficient seniority.
Brief for Appellant at 3–4.

2. The statute provides as follows:
§ 5. No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any em-

ployee who is determined physically unable to perform his assigned duties.
§ 6. A person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.
§ 7. The district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this Act. Okla.Stat. Tit. 85, §§ 5–7 (Supp.1980).

collective bargaining agreement and thus, that the plaintiffs, whether they filed claims under it or not, were bound by contract to pursue the exclusive remedy of arbitration. In addition, Peabody argues, even if appellees were not at first limited to the exclusive remedy of arbitration, their subsequent actions in filing grievances (and in some cases pursuing arbitration) amounted to a waiver of rights to pursue any other remedies that might originally have been available. Peabody further contends that even if arbitration were not necessarily the exclusive remedy under state law, the Oklahoma statute providing the appellees' cause of action here is preempted by federal labor policies.

The questions then are, *first*, was the Oklahoma Statute, Title 85, §§ 5–7 (Supp. 1980), under which this action which sounds in tort was filed, preempted by federal labor law? *Second*, does the federal policy which favors binding arbitration bar the application of the state statute here? And *third*, does the pursuit of this action under the state statute by the appellees violate state law pertaining to exclusivity of remedies? Our conclusion based on the reasons set forth below is that the trial court was correct in rejecting Peabody's challenge to its jurisdiction to hear the case.

## I. THE PREEMPTION QUESTION.

The preemption question addresses the extent to which Congress has placed implicit limits on the scope of state regulation of activity touching upon labor-management relations. *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 187, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978). Therefore, our concern is whether the remedy under the state law collides with the National Labor Relations Act whereby it is necessary to prohibit the action based on the state statute. It boils down to this: does the state statute interfere with the workings of the National Labor Relations Act? *Vaca v. Sipes*, 386 U.S. 171, 178–179, 87 S.Ct. 903, 910, 17

L.Ed.2d 842 (1967), quoted in *Farmer v. United Brotherhood of Carpenters and Joiners of America*, 430 U.S. 290, 295, 97 S.Ct. 1056, 1060, 51 L.Ed.2d 338 (1977).

### A. Is this a case which lends itself to the doctrine of preemption?

At the outset we note that Oklahoma Statute Title 85 §§ 5–7 (Supp.1980) is in its nature remote from the National Labor Relations Act and the collective bargaining agreement that was agreed upon between Peabody and the Union. The remedy which is being pursued by the plaintiffs in no way conflicts with the collective bargaining agreement or with the National Labor Relations Act. Thus, it cannot be said that this two sided action is preempted. The statute impedes neither collective bargaining nor any of the policies and purposes of the federal statute.

It is quite true that the powers of the National Labor Relations Board are very broad, and the Board functions under a liberal construction of interstate commerce. Its main purpose is to promote the organization of unions and to provide the unions with an atmosphere of freedom to organize and to bargain collectively. The kind of state law or policy that conflicts with the NLRB's jurisdiction is one which deals with a similar subject and which limits, restricts or interferes with the functioning of the National Labor Relations Act.

The Supreme Court's decision in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 187, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978) raised the question whether the granting of an injunction against picketing under state law was in conflict with the National Labor Relations Act. Indeed the question posed in the Supreme Court opinion per Mr. Justice Stevens was whether the National Labor Relations Act, as amended, deprived the state court of the power to entertain an action by an employer to enforce state trespass laws against picketing, which is arguably—but not definitely—prohibited or pro-

tected by federal law. The Supreme Court concluded that the National Labor Relations Act did not preempt trespass law enforcement jurisdiction. The Supreme Court said in passing:

> The Court has held that state jurisdiction to enforce its laws prohibiting violence, defamation, the intentional infliction of emotional distress, or obstruction of access to property is not preempted by the NLRA. But none of those violations of state law involves protected conduct. In contrast some violations of state trespass law may be actually protected by § 7 of the federal law.

436 U.S. at 204, 98 S.Ct. at 1761.

The Court cited *NLRB v. Babcock & Wilcox*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975, which recognized that in certain circumstances union organizers have the limited right of access to the employers' premises for the purpose of engaging in solicitation. The Court further observed, however, that "the locus of the accommodation of § 7 rights and private property rights * * * may fall at differing points along the spectrum depending on the nature and strength of the respective § 7 rights and private property rights asserted in any given context." 436 U.S. at 204, 98 S.Ct. at 1761, *quoting Hudgens v. NLRB*, 424 U.S. 507, 522, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196. In Sears, the Union had not presented the matter to the Labor Board and had not invoked its jurisdiction. The Court ultimately found that Congress had not intended to protect the character of the union's conduct, or to deprive the California courts of jurisdiction to entertain Sears' trespass action.

The holding in the *Sears* case seriously undermines the appellees' argument that the state statute is facially precluded by federal law. In *Farmer v. United Brotherhood of Carpenters and Joiners of America*, 430 U.S. 290, 295, 97 S.Ct. 1056, 1060, 51 L.Ed.2d 338, it was said:

> [B]ecause Congress has refrained from providing specific directions in respect to

the scope of preempted state regulation, the Court has been unwilling to "declare preempted all local regulation that touches or concerns in any way the complex in the relationships between employees, employers, and unions."

*Farmer, supra*, at 295–96, 97 S.Ct. at 1060–1061 (quoting *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 289, 91 S.Ct. 1909, 1919, 29 L.Ed.2d 473 (1971). It is thus apparent at the very outset that the preemption doctrine is not turned on by simply shouting preemption or by pressing a button.

▌ Two rationales apply to the invocation of the preemption doctrine. They are, first, the supremacy clause principle and second, the primary jurisdiction theory. *Sears, supra*, 436 U.S. at 198–200, 98 S.Ct. at 1758–1759. The supremacy clause focuses on the extent to which Congress has occupied the field of labor relations by extending federal protection to certain conduct. The primary jurisdiction theory requires preemption where the conduct at issue is subject to the unfair labor practice jurisdiction of the National Labor Relations Board. *Id.; Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre*, 504 F.Supp. 54, 65 (M.D.Pa.1980).

Some guidelines were provided by the Supreme Court in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). There the Court said that when the activities which a state purports to regulate are protected by § 7 of the NLRA, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. The Court further said that when an activity is arguably subject to § 7 or § 8 of the Act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. *Garmon, supra*, 79 S.Ct. at 779–780.

The formula discussed in *Garmon* was later supplemented by decisions establishing

an alternative supremacy clause-based route to preemption where the conduct at issue is neither arguably protected nor arguably prohibited by federal labor law. *See, e.g., Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976); *Local 20, Teamsters Union v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). These cases hold that a finding of preemption is justified if the court finds that the absence of federal regulation is indicative of a congressional determination to leave the challenged conduct available, and that to allow the states to regulate the conduct would be to upset the balance of power between labor and management expressed in national labor policy. *Local 20, Teamsters Union v. Morton, supra,* at 260, 84 S.Ct. at 1258.

There is a third preemption standard that is called the frustration test. This is outlined in 93 Harv.L.Rev. 60, 270 and n. 46 (1979). This test bases the decision to preempt state jurisdiction upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of permitting the state court to proceed. *Vaca v. Sipes,* 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967), quoted in *Sears, supra,* 436 U.S. at 188–89, 98 S.Ct. at 1752–1753. The state law will be found preempted if application of the law "would frustrate the effective implementation of the National Labor Relations Act's processes." *Lodge 76, International Association of Machinists, supra,* 427 U.S. at 147–148, 96 S.Ct. at 2556–2557; *Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 380, 89 S.Ct. 1109, 1116, 22 L.Ed.2d 344 (1969); *Wilkes-Barre Publishing Co., supra,* at 66.

The Supreme Court has discouraged the inflexible application of the *Garmon* doctrine, especially where the state has a substantial interest in regulation of the conduct at issue and the state's interest is one that does not threaten undue interference with the federal regulatory scheme. *Farmer v. United Brotherhood of Carpenters, supra,* 430 U.S. at 290, 97 S.Ct. at 1058. The Court has recognized exceptions to the preemption doctrine in cases that fulfill the just mentioned standard.

█ A state statute otherwise within the scope of *Garmon* will not be preempted if the conduct it regulates was a merely peripheral concern of the Labor Management Relations Act or touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress had deprived the states of the power to act. *Garmon, supra,* 359 U.S. at 243–44, 79 S.Ct. at 778–779, quoted in *Farmer, supra,* 430 U.S. at 296–97, 97 S.Ct. at 1061. One such example is the decision of the Supreme Court in *New York Telephone Co. v. New York State Department of Labor,* 440 U.S. 519, 539–40, 99 S.Ct. 1328, 1340–1341, 59 L.Ed.2d 553 (1979), wherein a state unemployment compensation statute was not preempted. *See also Sears, supra,* 436 U.S. at 195–97, 98 S.Ct. at 1756–1757 (state trespass statute not preempted); *Farmer, supra,* 430 U.S. at 304, 97 S.Ct. at 1065 (intentional infliction of mental distress action not preempted); *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (libel action not preempted); *Automobile Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (action for malicious interference with lawful occupation not preempted; conduct involved mass picketing and threats of violence); *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957) (state injunction against violent or threatening activity not preempted); *Machinists v. Gonzales,* 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958) (action for wrongful expulsion from union membership not preempted). In addition, the Court has refused to apply the preemption doctrine "where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtu-

ally all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), quoted in *Farmer, supra*, 430 U.S. at 297, 97 S.Ct. at 1061. *See Vaca v. Sipes, supra* (union's duty of fair representation).

B. *The Oklahoma Statute Falls Within the Preemption Exceptions Which Have Been Noted.*

 The conduct at issue in this case— discharge of workers because they pursued workers' compensation claims—is not subject to either protection or prohibition by the National Labor Relations Act because it has nothing whatsoever to do with union organization or collective bargaining. *See* 29 U.S.C. §§ 157–58. Likewise the underlying activity that provoked the conduct complained of—that is, the filing of workmen's compensation claims under state law—has no tendency to conflict with the National Labor Relations Act or any federal labor law.

Even if discharges related to workmen's compensation claims were covered by federal law, the discharges would more likely be prohibited than protected. It is inconceivable that there would be state court interference with federal labor policy in connection with the present type of statute. *See Farmer, supra*, 430 U.S. at 304–05, 97 S.Ct. at 1065–1066. *See also Sears, Roebuck & Co. v. San Diego County District Council of Carpenters* : A new Exception to the Labor Law Preemption Doctrine, 32 Rutgers L.Rev. 577, 585 (1979). Even in a situation where a minor aspect of the controversy presented to the state court is, at least arguably, within the regulatory jurisdiction of the Labor Board, the *Garmon* rule is not to be read to require preemption of state jurisdiction. *Sears, supra*, 436 U.S. at 188, n. 13, 98 S.Ct. at 1752 (*quoting Hanna Mining Co. v. Marine Engineers*, 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965)).

In view of the inapplicability of the *Garmon* test, the question then is whether the Oklahoma statute fits within the small class of cases where preemption is required even though the conduct is neither protected nor prohibited by federal labor statutes. *Local 20, Teamsters Union v. Morton, supra; Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission, supra.* In *Morton*, the Supreme Court ruled that an Ohio court could not award damages against a union for peaceful secondary picketing. The Court's decision inferred from § 303 of the Labor Management Relations Act a deliberate legislative intent to preserve this means of economic warfare for use during the bargaining process. In *Machinists*, the Court held that the state could not prohibit a union's concerted refusal to work overtime. There was no evidence of special congressional consideration, but the Court concluded that the union's activity was a form of economic self-help that was "part and parcel of the process of collective bargaining." 427 U.S. at 149, 96 S.Ct. at 2557.

The activity present in the case before us bears little resemblance to that found to be federally protected in those cases. There has been no special congressional consideration of workmen's compensation related discharges. Moreover, discharging workers because they have filed claims has nothing to do with collective bargaining. It cannot be classed as an essential aspect of the economic forces which enter into the shaping of viable labor agreements. *See New York Telephone Co., supra*, 440 U.S. at 531, 99 S.Ct. at 1336. The absence of federal regulation respecting workmen's compensation related discharges cannot be said to indicate any congressional intention or determination to leave the challenged conduct available. See *Morton, supra*, 377 U.S. at 260, 84 S.Ct. at 1258. It is unlikely that allowing states to regulate such conduct will in any way upset the balance of power between labor and management as expressed in the national labor policy. See *Id.* The Oklahoma statute does not challenge

federal labor objectives such as promoting labor peace or stimulating productivity by eliminating unqualified employees from a plant's work force. Rather, it regulates one aspect of the manner in which such objectives are attained, to ensure that inappropriate criteria do not motivate employers' decisions. *See Palm Beach Co. v. Journeymen's and Production Allied Services of America,* 519 F.Supp. 705, 715–16 (S.D.N.Y. 1981). The Oklahoma statute seeks to attack the exercise of an underhanded means of firing employees who have elected to utilize workmen's compensation. It is far removed from the objectives of organized labor.

As we have noted, *Sears, supra,* announced a balancing approach to preemption; that "frustration" test weighs the state's interest in the application of state law against the potential interference with national labor policy. *See Sears, supra,* 436 U.S. at 188–89, 196–98, 98 S.Ct. at 1752–1753, 1757–1758. Application of that approach reinforces our conclusion that the interests militating in favor of giving effect to the state law and holding that it is not an area of preemption are great. Workmen's compensation is preeminently a matter of state concern. *Cf. New York Telephone Co., supra,* 440 U.S. at 533–39, 99 S.Ct. at 1337–1340, (state unemployment compensation statutes should be treated with the same deference afforded other state laws protecting interests deeply rooted in local feeling and responsibility). It is probable that a state or, in this instance, a federal diversity action is the only forum in which conduct violative of rights pertaining to workmen's compensation claims can be scrutinized; such conduct is probably not cognizable in an unfair labor practice case. *Cf. Sears, supra,* 436 U.S. at 201–02, 98 S.Ct. at 1759–1760. We note also that the Oklahoma statute which is here considered is a law of general applicability and is not one whose object is to regulate relations between employees, their union, and their employer. It applies to all Oklahoma employees, not just union members or employ-

ers governed by collective bargaining agreements negotiated under federal law. A congressional intent to deprive the states of their power to enforce such general laws is more difficult to infer than an intent to preempt laws which are directed specifically at concerted union activity. *New York Telephone Co., supra,* 440 U.S. at 533, 99 S.Ct. at 1337; *Sears, supra,* 436 U.S. at 193–95, 194, n. 24, 98 S.Ct. at 1755–1756; *Garmon, supra,* 359 U.S. at 244, 79 S.Ct. at 779. The Oklahoma statute cannot be said to exceed the narrow scope of proper state concern about its workers compensation laws.

Moreover, as we have suggested above, the enforcement of the Oklahoma statute does not create any hazard of interference with federally protected activity. *See Sears, supra,* 436 U.S. at 197, 98 S.Ct. at 1757. The statute does not affect employers' rights to discharge persons for non-retaliatory reasons; in fact it provides that "no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties." Okla.Stat. Title 85, § 5 (Supp. 1980).

Therefore we foresee no likelihood of frustration of national labor policies. Indeed, even assuming that there exists a basis for a preliminary finding of preemption, still this statute would stand up under analysis and would fit within the "state concern" exceptions to the preemption requirement.

The Supreme Court has recognized that "the Labor Management Relations Act leaves much to the states, though Congress has refrained from telling us how much." *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 480–81, 75 S.Ct. 480, 487–488, 99 L.Ed. 546 (1955). The exceptions to the preemption doctrine emphasize the Court's concern for state laws governing matters that are particularly of state or local concern.

The Oklahoma statute in question, that is Okla.Stat. Title 85, §§ 5, 6 and 7, undertakes to regulate conduct that is purely local in its character. It seeks to remedy

discharges that are imposed as sanctions against state workers who are claiming workmen's compensation. Actions for damages brought pursuant to the Oklahoma statute are not unlike other state law tort actions sustained by the Supreme Court as exceptions to the preemption doctrine. *Cf. Farmer, supra,* (intentional infliction of mental distress); *Linn v. Plant Guard Workers, supra,* (libel); *Automobile Workers v. Russell, supra,* (malicious interference with lawful occupation); *Machinists v. Gonzales, supra,* (wrongful expulsion from union membership). A significant number of state supreme courts in fact have created implied tort remedies for discharge related to the filing of workmen's compensation claims; these rulings are designed to protect the rights of employees to file such claims in proper circumstances without suffering the risk of losing their jobs. In no case have such remedies been found to have been preempted. *See, e.g., Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979); *Sventko v. Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Brown v. Transcon Lines,* 284 Or. 597, 588 P.2d 1087 (1978) (en banc). *Compare Bradmon v. Ford Motor Co.,* No. 78–70913 (E.D.Mich. November 14, 1980) (unpublished opinion) (cause of action created by Michigan court in *Sventko v. Kroger Co.* is correctly characterized as sounding in tort, though it does not extend, in the absence of specific statutory provision, to workers covered by other remedies; preemption may be one relevant consideration in reaching that decision, but would be less relevant if cause of action were statutory). The federal appellate courts' consideration of those implied causes of action has focused upon applicability rather than preemption. *See, e.g., Green v.*

*Amerada-Hess Corp.,* 612 F.2d 212 (5th Cir. 1980) (no cause of action for retaliatory discharge to be found in Mississippi law; distinguishes states that provide by statute for civil actions); *Loucks v. Star City Glass Co.,* 551 F.2d 745 (7th Cir. 1977) (no cause of action for wrongful discharge to be found in Illinois law in 1974).

Other states besides Oklahoma have found it appropriate to authorize by statute actions for retaliatory discharge.[3]

Some preemption cases have emphasized the seriousness of tortious conduct that states may regulate under the "interests deeply rooted in local feeling" exception to the preemption doctrine. *Sears, supra,* 436 U.S. at 195, 98 S.Ct. at 1756 mentions actual or threatened violence as an important factor in many cases. The states, of course, have the right in the exercise of their police power to regulate activity which constitutes a threat to public order or injury to personal interests. *Palm Beach Co., supra,* at 714. Courts have suggested that business or purely economic personal torts are less likely to survive federal preemption, however. *Id.* at 714.

Unlawful discharges have sometimes been compared to economic injury torts for some purposes. *Davis v. United States Steel,* 581 F.2d 335, 339 (3rd Cir. 1978) (unlawful discharge related to racial status is said to be an economic tort rather than one involving injury to the person, for purposes of determining applicable statute of limitations). Notwithstanding, we conclude that the conduct addressed by the Oklahoma statute is sufficiently serious to merit its inclusion within the exceptions to the preemption doctrine. Deprivation of livelihood certainly is serious personal injury, particularly if it is inflicted under the guise of validity. Even if the injury is characterized

---

**3.** Those statutes are discussed in cited cases *Carnation Co. v. Borner,* 610 S.W.2d 450 (Tex. 1981); *Vaughn v. Pacific Northwest Bell Telephone Co.,* 289 Or. 73, 611 P.2d 281 (1980); *Lally v. Copygraphics,* 173 N.J.Super. 162, 413 A.2d 960 (1980); and *Lo Dolce v. Regional Transit Service, Inc.,* 77 A.D.2d 697, 429 N.Y. S.2d 505 (3d Dept. 1980). No federal court appears to have ruled on the validity of those statutes. One state supreme court expressly rejected a preemption challenge to the statute that it was considering. *See Vaughn, supra,* 611 P.2d at 286–87.

as economic, it is sufficiently oppressive to individuals—perhaps more so than a true business tort such as interference with business relationships, which was viewed as insufficiently serious or personal in *Palm Beach Co., supra*. Moreover, even economic or business torts may survive preemption if their widespread impact on the community as a whole is sufficiently serious. *Palm Beach Co., supra*, at 714. Here the potential community-wide impact of permitting retaliatory discharges related to worker's claims is substantial. If these discharges are allowed, it would seriously hamper the operation of the worker's compensation system. It would impede the filing of and adjudication of many valid claims. The Oklahoma legislature's decision to specifically address such discharges in the statute considered here certainly supports the community-wide importance of the issue.

There is one other exception that we have discussed above which should be applied as well. That is the tenuous relationship between the federal labor laws and the remedy that is here being challenged. In other words, the concern of the federal labor laws is, to say the least, peripheral and tenuous. The courts have found that this exception applies where application of the state law would not declare the labor objective unlawful, but would either regulate the means of obtaining that objective or would invalidate a different, non-labor objective. *Palm Beach Co., supra*, at 715.

For the reasons that have been set forth at some length above, it is our conclusion that the Oklahoma statute is not facially preempted by any of the federal labor laws.

## II. DOES THE PROVISION IN THE COLLECTIVE BARGAINING CONTRACT CALLING FOR BINDING ARBITRATION BAR THE REMEDY UNDER THE OKLAHOMA STATUTE?

The appellant Peabody maintains that the inclusion within the collective bargaining agreement of terms governing the status of disabled employees precludes the employees from suing under an independent statutory cause of action.

### A. Arbitrability

The first question which we must consider is whether this dispute, which the Company maintains is subject to binding arbitration, actually arose under the collective bargaining agreement. If it did not, then it is not arbitrable and the action under the Oklahoma statute is proper.

■■ We recognize that federal policy favors use of the arbitration remedy in connection with a collective bargaining agreement which has an arbitration clause in it. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567, 569, 80 S.Ct. 1343, 1346, 1347, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409. Thus, where one party contends the other has failed to exhaust contractual remedies including arbitration, an order to arbitrate the grievance is appropriate unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation covering the asserted dispute. *Warrior and Gulf Navigation Co., supra*, at 583, 80 S.Ct. at 1353.

It is conceded that some aspects of the dispute are arbitrable. The agreement does establish some guidelines for placing workers on workmen's compensation. Consequently the employees placed on leave could immediately claim that Peabody's conduct violated certain of those guidelines. Article XV of the agreement provided that employees disabled as a result of on-the-job illnesses or injuries could be placed on leave until suitable jobs became available; it also provided, however, that employees on leave who recovered sufficiently to return to their regular jobs had the right to do so if they had sufficient seniority.

■■ Accordingly some features of the dispute, particularly the question of the dis-

charged employees' fitness to perform their jobs, were arbitrable. Indeed, the discharged employees acknowledged that fact by filing grievances and, in two cases, actually proceeding to arbitration. However, a very important feature of this dispute was not subject to arbitration and that aspect is the legality of Peabody's motive for placing the employees on leave. The source of the employees' right to raise the litigated issue is an Oklahoma statute. It is not the collective bargaining agreement. This cannot be denied. It is fundamental that an individual cannot be compelled to arbitrate a dispute which he did not contract to arbitrate. *See Wren v. Sletten Construction Co.*, 654 F.2d 529, 537 (9th Cir. 1981). Furthermore, where contractual rights are supplemented by statutory rights, the rule that the arbitrator is confined to interpretation and application of the collective bargaining agreement may preclude a finding that the statutory claim is arbitrable. *See Wilmington Typographical Union No. 103 v. News-Journal Co.*, 513 F.Supp. 987, 989–90 (D.Del. 1981). *See also Waits v. Weller*, 653 F.2d 1288, 1292 & n. 9 (9th Cir. 1981). This latter Ninth Circuit case considered whether statutory rights that supplement contractual rights could be submitted to arbitration. The court adopted a balancing process, weighing the competing interests of the statutory right of access to courts against the federal policy favoring arbitration.

■ In the light of the authorities cited above it follows that the issue here being litigated was not properly arbitrable under the collective bargaining agreement. It was not contemplated that it should be arbitrated, and if it were, it would not be final or exclusive. *See Vaughn v. Pacific Northwest Telephone Co.*, 289 Or. 73, 611 P.2d 281 (1980). But even if it were determined that the dispute was arbitrable, neither the exclusivity rule nor exhaustion concerns would deprive the trial court of jurisdiction.

B. *Is Exclusivity of the Arbitration Remedy Appropriate Under Federal Law?*

■ Federal labor policy looks favorably on binding arbitration, based upon sound policies like promotion of labor peace and enhancement of workers' bargaining power. Arbitration procedures supplement the union's status as exclusive bargaining representative by assigning it responsibility for the handling of individual grievances. Thus the rule was evolved that arbitrated grievances may not be litigated in court when the collective bargaining agreement provides for final and binding arbitration. *See Balowski v. International Union*, 372 F.2d 829, 833 (6th Cir. 1967). *See also United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). A few courts that have rejected suits allegedly founded on state law because the federal exclusivity policy controls have viewed their rulings as based on the preemption doctrine. *See, e.g., Thompson v. Monsanto Co.*, 559 S.W.2d 873, 876 (Tex.Civ.App.1977).

Nevertheless there are certain exceptions to the exclusivity rule, and to its logical corollary, the exhaustion rule. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In that case the union breached its duty of fair representation, and an independent tort action was permitted. *See also U. S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) (statute authorized collection of seamen's wages in a manner which was an alternative to arbitration process); *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (effort to proceed formally with contractual or administrative remedies would be entirely futile because of racial discrimination); *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) (arbitration does not preclude review by the NLRB). The most significant of the Supreme Court decisions finding exceptions were *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

In *Gardner-Denver*, the petitioner, a black employee, had been discharged by his

employer because allegedly he had produced too many defective parts. The employee claimed that he was discharged entirely because of his race and filed a grievance alleging a violation of the nondiscrimination clause in the collective bargaining agreement. The arbitrator found that the employee had been discharged for just cause. The employee then filed a Title VII action in federal district court based on the same facts that were before the arbitrator. The district court, later affirmed by the court of appeals, granted summary judgment to the employer on the ground that the employee was bound by the prior adverse arbitral decision.

The Supreme Court reversed. It concluded that the employee's statutory right to trial under Title VII was *not* foreclosed by his earlier submission of a discrimination claim to arbitration. "The Court found that in enacting Title VII, Congress had granted individual employees a nonwaivable public law right to equal employment opportunities that was separate and distinct from the rights created through the 'majoritarian processes' of collective bargaining." *Barrentine v. Arkansas-Best Freight System, supra*, at 737, 101 S.Ct. at 1443 (quoting *Gardner-Denver, supra*, at 51). In addition, "because Congress had granted aggrieved employees access to the courts, and because contractual grievances and arbitration procedures provided an inadequate forum for enforcement of Title VII rights, the court concluded that Title VII claims should be resolved by the courts *de novo*." *Id.*

The Supreme Court recently extended the *Gardner-Denver* rationale to another class of statutory actions in *Barrentine.* The petitioners in that case were truck drivers who were required by federal law to conduct a safety inspection of their trucks before commencing any trip. The drivers were not compensated by their employer for the time spent on that task. They filed grievances against their employer, and alleged that the collective bargaining agreement required the employer to compensate them. A joint grievance committee rejected the grievances without explanation. The drivers filed an action in federal district court alleging that time consumed in the pre-trip inspections was compensable under the Fair Labor Standards Act, again resorting to an independent remedy. The district court dismissed the action, and was affirmed by the court of appeals.

The Supreme Court again reversed. It held that the employees need not exhaust grievance procedures established by collective bargaining agreements when seeking to vindicate rights created by the FLSA. The Court's rationale for that decision is applicable here as well. The reasoning of the Court was that the minimum pay and maximum hour provisions of the Federal Labor Standards Act are substantive rights that devolve on workers individually, not collectively, and may not be waived under collective bargaining agreements. *Barrentine, supra*, at 737–44, 101 S.Ct. at 1443–47. Also emphasized was the fact that the Federal Labor Standards Act claims were not based on rights arising out of the collective bargaining agreement. The same is true here. *Id.* at 737, 101 S.Ct. at 1443. *See also, Leone v. Mobil Oil Corp.*, 173 U.S.App. D.C. 204, 523 F.2d 1153 (D.C.Cir.1975) (FLSA remedy is alternative to arbitration). In the instant case it is true that the independent remedy arises under state law rather than federal. We hold, however, that that does not constitute a distinguishing factor.

After all, the source of the right here exercised is a statute. It is not a court-made rule. *See Bradmon v. Ford Motor Co.*, No. 78–70913, (E.D.Mich. November 14, 1980). The *Bradmon* court rejected plaintiff's state law retaliatory discharge claim but rested its decision in part on the absence of any specific statutory provision against retaliatory discharges. The court further noted that its opinion "does not suggest that a statutory right of action ... could be avoided by an employer who has a

collective bargaining agreement with a union." As a statute, the Oklahoma law is the product of careful legislative consideration of an abusive practice of particular state responsibility and concern.

Apart from the feature of employment discrimination in this case, *see Vaughn v. Pacific Northwest Bell Tel. Co.,* 289 Or. 73, 611 P.2d 281, 290 (1980), we note that the statute here, like the Federal Labor Standards Act, provides substantive minimum protection to individual workers, protections that are not to be abridged by contract. *See Barrentine, supra,* at 739–41, 101 S.Ct. at 1444–45. The enforcement of such statutory protections cannot conflict with policies favoring final contractual remedies since contractual remedies are powerless to address such protections. The *Barrentine* court mentioned two reasons why substantive rights, such as we have here, are not to be relegated to arbitration. First, notwithstanding the meritorious nature of an employee's claim, his union might well decide not to support the claim vigorously in arbitration. *Barrentine, supra,* at 740–43, 101 S.Ct. at 1445–46. A union's objective is to maximize overall employment of its members rather to ensure the continued employment of individuals; thus a union balancing individual and collective interests might validly permit some disabled employees' statutory protections from discharges for retaliatory reasons to be sacrificed in exchange for increased benefits for workers in the bargaining unit as a whole. *See Barrentine, supra,* at 742–43, 101 S.Ct. at 1446. Second, even when the union has fairly and fully presented the employee's wage claim, the employee's statutory rights might still not be adequately protected. Arbitrators may not be cognizant of important policies underlying statutes like the Oklahoma law, and thus may incorrectly decide the ultimate issue of whether employees' rights under such statutes were violated. In addition, arbitrators may lack the contractual authority to interpret and apply statutory law. "[The arbitrator] has no general authority to invoke public laws that conflict

with the bargain between the parties." *Id.* at 1446. Finally,—and importantly here— arbitrators often are powerless to grant the aggrieved employees as broad a range of relief as they could obtain in a judicial proceeding under the statute. *Id.* at 1447.

\* \* \*

There remains one other factor which supports this court's decision that federal exclusivity and exhaustion policies fail to bar appellees from relying upon the Oklahoma statute. This pertains to the separateness of the arbitrated from the litigated claim in this case. Each has an independent character. As noted earlier in the arbitrability discussion, the issue of motive which is being litigated here is certainly distinct from the contract interpretation issue to be decided by the arbitrator. Many cases have stated that suits arising under statutes like that in the instant case are *tort* actions, *see, e.g., Smith v. Atlas Off-Shore Boat Service, Inc.,* 653 F.2d 1057, 1061–62 (5th Cir. 1981); *Bradmon v. Ford Motor Co.,* No. 78–70913 (E.D.Mich. November 14, 1980); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), while virtually all courts characterize arbitrable disputes as necessarily *contractual* in nature. *See, e.g., Wren v. Sletten Construction Co.,* 654 F.2d 529, 535, n. 5 (9th Cir. 1981). Statutory remedies are also quite different from those available under arbitration. Indeed here, the workers seek injunctive relief against any future retaliatory discharges, in addition to compensatory and punitive damages. In their grievances, on the other hand, they sought reinstatement and back pay. Undoubtedly, the statutory remedies are supplemental. Decisions rendered by the district court need not affect the validity of any arbitral decisions. Likewise, an arbitral decision denying contractual relief because the employer had not violated the contract, for example, need not constitute res judicata with respect to a subsequent judicial decision on separate statutory claims.

In the *Barrentine* decision, the Supreme Court recognized the unsuitability of non-

contractual disputes for binding resolution in accordance with procedures established by collective bargaining. The Court said "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Id.* at 737, 101 S.Ct. at 1443. The Court further said, quoting from *Gardner-Denver*, "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Id.* at 728, 101 S.Ct. at 1447.

It is thus apparent that the contention of Peabody that the arbitration clause bars this action is wholly lacking in merit.[4]

We hold that the federal exclusivity policy does not bar the appellees from resorting to the Oklahoma statute under the facts that are presented here. Since the arbitration remedy is not exclusive, it is unnecessary for the court to give further consideration to the exhaustion issue raised with regard to those appellees who have not fully arbitrated their grievances. *Cf. Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914 (7th Cir. 1974); *Otero v. International Union of Electrical Radio and Machine Workers*, 474 F.2d 3 (9th Cir. 1973).

C. *Arbitration Is not The Exclusive Remedy Under State Law*

We have concluded that the Oklahoma Supreme Court would rule that Okla. Stat. Title 85, §§ 5–7 (Supp.1980) is neither preempted by federal law nor barred from application here by federal exclusivity poli-

cies. We consider here the final question of state law pertaining to exclusivity.

The Oklahoma Supreme Court has not yet had occasion to discuss exclusivity in the context of a Title 85 action. The rulings that are to be found in Oklahoma cases are largely based on federal exclusivity policies. *See, e.g., Voss v. City of Oklahoma City*, 618 P.2d 925 (Okl.1980), where it was held that a discharged firefighter who had sought arbitration could not thereafter maintain a breach of contract action in the state district court. This decision was based on the proposition that the contractual dispute arose directly from the interpretation or application of the collective bargaining agreement and therefore was subject to federal and state exclusivity requirements. *See also City of Midwest City v. Harris*, 561 P.2d 1357 (Okl.1977) (regarding the exhaustion problem, district courts had no jurisdiction to issue declaratory judgment interpreting collective bargaining agreement where firefighter's union had failed to pursue exclusive remedy of arbitration). Another relevant case is *International Association of Firefighters v. City of Edmond*, 619 P.2d 1274 (Okl.App.1980). Here it was held by the court of appeals that the City of Edmond could be compelled by mandamus to arbitrate a grievance arising under an expired collective bargaining agreement. The court noted parenthetically that federal arbitrability policies were more sweeping in scope than those of the state. *Id.* at 1275. It concluded, however, that the preference for arbitration expressed in the state's Fire and Police Arbitration Act was sufficiently broad, when viewed in conjunction with the expired contract, to require arbitration of the grievance at issue.

These cases plainly do not govern the present case. Here the action is not rooted in a collective bargaining agreement; it is based on a statutory principle in the nature

---

4. We do not suggest, however, that the trial judge should ignore the arbitrator's decision. It may indeed have some probative value. *See*

*Barrentine, supra*, at 743, 101 S.Ct. at 1446, n. 22.

of tort. Furthermore, the statute at issue in this case plainly was intended to prohibit all retaliatory discharges related to workers' compensation claims, regardless of the existence of alternate remedies in collective bargaining agreements. The statute is not precluded from application here by federal policies; a fortiori, then, it is not precluded by any state exclusivity provision.

The appellants contend that Texas law is persuasive. An examination of the Texas cases, however, convinces us that they are not persuasive in their present context and that the Oklahoma Supreme Court would not change its view. as a result of consideration of them. It is true that the Texas case of *Thompson v. Monsanto Co.*, 559 S.W.2d 873 (Tex.Civ.App.1977), supports the view that a prior arbitral decision bars a subsequent action under the state's retaliatory discharge statute because of exclusivity concerns. This was a decision of the Texas Court of Civil Appeals, however; it was never reviewed by the Supreme Court, which has ruled against enforcement of the exclusivity policy in every case presenting similar issues that has subsequently come before it. *See, e.g., Carnation Co. v. Borner*, 610 S.W.2d 450 (Tex.1980); *Spainhouer v. Western Electric Co.*, 615 S.W.2d 190 (Tex.1981); *Hughes Tool Co. v. Richards*, 615 S.W.2d 196 (Tex.1981). Two of those decisions, in fact, were reversals of Texas Court of Civil Appeals opinions that had relied upon *Thompson v. Monsanto Co.* These were *Spainhouer v. Western Electric Co.*, 592 S.W.2d 662 (Tex.Civ.App.1979), reversed, 615 S.W.2d 190 (Tex.1981); *Hughes Tool Co. v. Richards*, 610 S.W.2d 232 (Tex. Civ.App.), reversed, 615 S.W.2d 196 (Tex. 1981).

The Texas Supreme Court has not expressly overruled *Thompson*, but certainly its decisions are such that it doesn't seem likely that *Thompson* would be followed. Indeed, an almost opposite position is increasingly being adopted by the Texas Supreme Court. That court has held that employees who have filed grievances under collective bargaining agreements may pursue a separate action under the state's retaliatory discharge statute so long as the grievance does not proceed to final settlement. We do not approve that position to the extent that final settlement would bar separate actions.

Having found that the Oklahoma statute is valid and is applicable to this case under both federal and state law, we affirm the judgment of the trial court denying the motion of Peabody for summary judgment and we order the cause to be remanded for further proceedings.